# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 99-4278MN, 99-4283MN

_____

Ronald Mancini and Cheryl Mancini,     *

        *

     Appellees/Cross-Appellants,     *

        *    On Appeal from the United

v.         *    States District Court

        *    for the District of

        *    Minnesota.

Redland Insurance Company,     *

        *

     Appellant/Cross-Appellee.     *

_____

Submitted: February 14, 2001

Filed: May 8, 2001

_____

Before RICHARD S. ARNOLD, LAY, and HANSEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Defendant Redland Insurance Company is a private insurer that administers federally subsidized flood insurance pursuant to the National Flood Insurance Act, 42 U.S.C. § 4001-4041, 4071-4129. The plaintiffs, Ronald and Cheryl Mancini, brought this suit when Redland denied their claim for flood damage to their mobile home. The District Court found for the plaintiffs, but awarded them only part of the damages requested. Redland appeals, and the Mancinis cross-appeal. We hold that the

Mancinis' failure to submit a signed and sworn proof of loss entitles Redland to judgment as a matter of law.

I.

The District Court found the following facts. In February of 1997, Ron and Cheryl Mancini bought a 70-acre farm near Dry Lake in Minnesota. Because the winter's heavy snowfall had left large drifts on the property, the Mancinis went to a local agent on March 11, 1997, and purchased a Standard Flood Insurance Policy (SFIP) from Redland.[1] This was a federally subsidized policy issued pursuant to the National Flood Insurance Act. Its coverage was limited to $75,000 for the Mancinis' mobile home and $18,000 for their personal property inside the home. After a 30-day waiting period, of which the Mancinis were informed at the time of purchase, the policy became effective on April 10, 1997. During that same period, the snow began to melt, and the nearby lake began to flood. A county worker activated an overflow pump near the home on April 3, which caused water to flow toward the home. As of April 4, about six inches of water covered part of the county road that runs past the home. The County closed the road the same day. At that time, the water had not yet reached the home, and freezing temperatures prevented it from doing so until after the effective date of the policy.

On April 14, the Mancinis submitted a notice to Redland stating that the house was surrounded by water and that they were unable to assess the damage, if any, because freezing prevented their reaching the house by boat. Redland hired an

---

[1]Although private companies like Redland that issue SFIPs are referred to as "Write-Your-Own" companies, see, e.g., 44 C.F.R. § 61.13(f) (2000), the provisions of the SFIP are set forth in the Code of Federal Regulations, and the issuing companies are not generally authorized to vary, alter, or waive those provisions. See 44 C.F.R. § 61.13(d) (2000). For the policy at issue here, see 44 C.F.R. Pt. 61, App. A(1) (1997).

adjusting company called RGA, Inc. The RGA adjuster who visited the property on April 23 reported to Redland that he predicted a total loss. He first estimated the damage at $30,000, but later revised that estimate to $60,000. RGA gave the Mancinis slightly different numbers: they were initially told that the value of their loss would be $31,000, but another RGA adjuster, Ray Graf, later raised that valuation to $56,000.

The Mancinis believed, however, that they were entitled to the full policy limit of $93,000 for the home and its contents. The SFIP provides that:

> Where the insured building has been inundated by rising lake waters continuously for 90 days or more and it appears reasonably certain that a continuation of this flooding will result in damage, reimbursable under this policy, to the insured building equal to or greater than the building policy limits plus the deductible(s) or the maximum payable under the policy for any one building loss, we will pay you the lesser of these two amounts without waiting for the further damage to occur if you sign a release agreeing:
>
> 1. To make no further claim under this policy;
>
> 2. Not to seek renewal of this policy; and
>
> 3. Not to apply for any flood insurance under the Act for property at the property location of the insured building.

Trial Exhibit Appendix, Ex. 1 at 19. As of July 13, the insured building had been inundated with water for 90 days.

The SFIP requires that an insured comply with certain claim-handling procedures in order to recover under the policy. Among the requirements in the Mancinis' policy is that, within 60 days after the loss, the insured must submit a "proof of loss," defined

as "your statement as to the amount you are claiming under the policy signed and sworn to by you . . .." Trial Exhibit Appendix, Ex. 1 at 17. On August 15, Ray Graf sent the Mancinis a proof-of-loss form containing all the required information, together with an adjuster's report and supporting documents. The report was signed by the adjuster and had blank spaces for the Mancinis' signatures. Each of these spaces was marked with a handwritten X. The proof-of-loss form, which the adjuster did not sign, bore handwritten Xs on the two signature lines reading "Insured." A letter accompanying the forms stated as follows:

> Enclosed are your spread sheets that reflect your covered damages to your dwelling and contents, with the Proof of loss and Final report forms.
>
> These will require your signature and return them to our office in Minnesota either by mail or fax.
>
> 1. Proof of Loss – Must be notarized!!
>
> 2. Final Report – Must be Witnessed!!
>
> Once we receive these forms, we will attach to your file and forward to the process center for final determination and payment consideration.

Trial Exhibit Appendix, Ex. 16 at 2. Instead of signing the forms and returning them to Mr. Graf, the Mancinis faxed them, neither signed nor notarized, to Redland Claims Representative Chad Huebner, with a hand-printed cover sheet reading:

> Chad here is the information you are waiting on from Ray Graf. It was told to us that you would call us on 8/19/97 as to the status of this policy. We would appreciate a call back today from you, this deserves your immediate attention.
>
> Ron & Cheryl Mancini

Id. at 1.  The District Court found that the Mancinis believed that, by submitting the forms to Redland accompanied by a transmittal letter bearing their printed names, they had signed and sworn to the proof of loss.  The policy, which they had read, states that to make a false statement in submitting a claim may be a violation of federal law.

On August 28, Redland asked a National Flood Insurance Program adjuster to inspect the Mancinis' property.  The adjuster did so on September 3.  By a letter to the Mancinis' attorney, dated November 11, 1997, Redland denied the Mancinis' claim on the ground that the loss was already in progress on the effective date of the policy.  Redland contended that the date of loss was not April 13 but April 4, when the County closed the road near the home.  The letter denying the claim specifically reserved all of Redland's rights and remedies under the policy or applicable law, and disclaimed any intent to waive any right or any provision or condition of the policy.

On February 17, 1998, the Mancinis' attorney wrote to Redland asking whether the claim had been denied.  The letter specifically asked whether Redland contended that the Mancinis had failed to submit a proper proof of loss.  Redland's reply, dated March 9, stated that Redland had denied the claim as a loss in progress.  It made no mention whatsoever of the proof-of-loss issue.

The Mancinis then filed this lawsuit.  The case was tried to the Court.  Redland defended on two theories:  that the claim fell within an express exclusion for losses already in progress on the effective date of the policy, and that the plaintiffs had failed to comply with the policy's requirement that they submit a signed and sworn proof of loss.  The District Court found for the plaintiffs, holding that the loss-in-progress exclusion did not apply and that the Mancinis had "technically complied with the proof of loss provisions of the policy."  It awarded the Mancinis the $56,257.33 included by the adjuster on the proof-of-loss form, but denied all other  items of damages as not

having been submitted to the company in accordance with the policy. This appeal and cross-appeal followed.

## II.

Because Redland functions here not as a purely private insurance company, but as a fiscal agent of the United States, see 42 U.S.C. § 4071(a)(1), this case is governed to some extent by rules quite different from those that would apply in a normal insurance dispute. The policy the Mancinis bought is more than a contract: it is also a regulation of the Federal Emergency Management Agency, stating the conditions under which federal flood-insurance funds may be disbursed to eligible policy holders. See 44 C.F.R. § 61.13 (1997). The Supreme Court has held that courts must strictly construe the statutory or regulatory limits upon disbursements of funds through federal insurance programs. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385-86 (1947). Like our sister circuits, we are unable to avoid the conclusion that the proof-of-loss provision in the SFIP states such a limit and must therefore be strictly construed. Accord, Flick v. Liberty Mut. Fire Ins. Co., 205 F.3d 386, 387 (9th Cir.), cert. denied, 121 S. Ct. 305 (2000); Gowland v. AETNA, 143 F.3d 951, 955 (5th Cir. 1998). Additionally, the SFIP states that an insured must comply with all policy requirements or lose the right to sue under the policy. Because a plaintiff's judgment in such a suit would be paid out of the federal treasury, those requirements function as "conditions precedent to a waiver by the federal government of its sovereign immunity." Wagner v. Director, FEMA, 847 F.2d 515, 518 (9th Cir. 1988). That circumstance is an independent reason why we must strictly construe the proof-of-loss requirement. Id.

Bearing that duty in mind, we next determine what the Mancinis were required to do in order to submit a valid proof of loss. The SFIP defines a proof of loss as "your [i.e., the insured's] statement as to the amount you are claiming under the policy signed and sworn by you" and providing certain kinds of information necessary for the

company to process the claim. The company does not deny that the materials the Mancinis faxed on August 20, 1997, contained the relevant information. It does deny, however, that the submitted documents conformed to the requirement of a "statement . . . signed and sworn" by the insured. The policy does not state that the proof of loss must be verified before a notary. Nor does it state that the proof must be submitted on any particular form. In fact, it warns insured parties that they are obligated to submit a proof of loss even if the adjuster does not provide them with a form. It does, however, define a proof of loss as a statement of the insured, not of some third party, and it does require that the insured sign and swear to that statement.[2] Given the special nature of this policy, the Mancinis must show actual and complete compliance with this requirement: it is not sufficient to show that they substantially complied or that the insurer suffered no prejudice. Compare Merrill, 332 U.S. at 385 (stating that "the duty of all courts to observe the conditions defined by Congress for charging the public treasury" imposes on citizens a corresponding duty to " 'turn square corners when they deal with the Government' "), with Gowland, 143 F.3d 951, 954 (substantial compliance with proof-of-loss requirement is not enough), and Flick, 205 F.3d 386, 390 (rejecting substantial-compliance and no-prejudice arguments).

The District Court held that the Mancinis had submitted a valid proof of loss by (1) "signing" the transmittal sheet that accompanied the forms, and (2) sending the forms to Redland in the belief that to submit false information as part of their claim would subject them to penalties under federal law. We disagree with this conclusion. There is no evidence that the Mancinis regularly printed their signatures, and the contract for deed to their mobile home is signed in cursive. But even if we accepted that the printed names "Ron & Cheryl Mancini" constitute a signature, that signature

---

[2]The Mancinis do not assert that Redland waived the proof-of-loss requirement, as the terms of the policy arguably authorized it to do. Even if Redland had done so, however, the Mancinis would still have had to sign the adjuster's report in order to comply with the policy provisions. See Trial Exhibit Appendix, Ex. 1 at 17.

does not appear on a statement by the Mancinis as to the amount they claimed under the policy. The handwritten note states only that the accompanying fax contains "the information . . . from Ray Graf." It makes no representation that the Mancinis believed Mr. Graf's figures were correct, or that they wished to use them as a basis for their claim; in fact, Mr. Mancini testified that his reason for not signing the form was that "$56,000 was not agreeable." Dep. of Ron Mancini at 37. We agree with the District Court that the Mancinis "did not indicate that they were specifically rejecting or nullifying the figures listed . . .." But the Mancinis were required to do more than merely submit a set of figures together with a signed statement not rejecting or nullifying those figures. They had to submit a signed statement as to the amount claimed under the policy. They simply did not do so.

Nor are we persuaded that the proof of loss was sworn. A false statement, to be sure, would have been punishable as a crime under 18 U.S.C. § 1001, but that is true of any material false statement to a federal agency with respect to a matter within its jurisdiction. The mere existence of this statute does not mean that every such statement is "sworn." The District Court held that "sworn" means "verified," and that the proof of loss was verified by the adjuster. We respectfully disagree with this reasoning. Apart from any other reason, it is the insured, not the adjuster, who must swear to the proof of loss.

### III.

The Mancinis next argue that, even if their proof of loss did not satisfy the policy requirements, Redland is equitably estopped to raise a proof-of-loss objection because they reasonably relied to their detriment on conduct by Redland that suggested their form had been accepted. The note that accompanied the form asked that Redland call them immediately, which Redland did not do. Instead, it requested a visit to the site of the loss by a government adjuster, who spoke with the Mancinis at length about the loss-in-progress issue but does not appear to have mentioned the proof of loss. This

visit occurred in early September, during the 60-day period in which the Mancinis could still have signed and sworn to the form. After that period had expired, the Mancinis' lawyer wrote to the company and expressly inquired whether it was the company's position that the Mancinis' proof of loss was defective. In its reply to that letter, the company made no such claim.

The Mancinis, in effect, are asking that we apply the doctrine of equitable estoppel to prevent the enforcement of a federal regulation. We are powerless to do so on the facts presented here. The Supreme Court has long and consistently held that "the Government may not be estopped on the same terms as any other litigant." Heckler v. Community Health Serv. of Crawford County, Inc., 467 U.S. 51, 60 (1984). Although the Court has left open the possibility that "affirmative misconduct," Schweiker v. Hansen, 450 U.S. 785, 788 (1981), might justify estoppel against the government in some circumstances, we see no such misconduct here. Moreover, the Supreme Court has made clear that estoppel cannot be used to compel the government to pay money from the federal treasury beyond the limits of a congressional appropriation. Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 426 (1990). Because we have concluded that the proof-of-loss requirement in the SFIP defines such a limit, the Mancinis' estoppel argument necessarily fails.

## IV.

Redland is entitled to judgment as a matter of law. The policy, strictly construed, permits the company to deny coverage where an insured has failed to submit a signed and sworn statement of the amount claimed, and it divests a non-complying insured of the right to sue. The doctrine of equitable estoppel cannot be applied to compel an unauthorized disbursement from the federal treasury. For these reasons, the District Court's judgment is reversed. The case is remanded with instructions to enter judgment for the defendant.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.