Richard M. ROJEK, Plaintiff,

v.

FEDERAL EMERGENCY MANAGE-
MENT AGENCY and National
Con–Serv, Inc., Defendants.

No. 3:02–CV–40027.

United States District Court,
S.D. Iowa,
Davenport Division.

Dec. 3, 2002.

Jeffrey P. Taylor, Klinger Robinson
McCuskey & Cable, Cedar Rapids, IA, for
Plaintiff.

Christopher D. Hagen, United States
Attorney, Des Moines, IA, Patrick L.
Woodward, McDonald Stonebraker Cepi-
can & Woodward PC, Davenport, IA,
John - Marshall, Moldawer & Marshall
PC, Rockville, MD, for Defendants.

**RULING ON FEMA'S MOTION TO
DISMISS OR ALTERNATIVELY,
MOTION FOR SUMMARY JUDG-
MENT**

GRITZNER, District Judge.

This case arises out of a major flood
which overwhelmed the city of Davenport,
Iowa. Defendant, the Federal Emergency
Management Agency [hereinafter
"FEMA"], as its name suggests, manages
federal responses to emergencies such as
this Davenport flood. One of FEMA's di-
visions, the Federal Insurance Adminis-
tration, is in charge of administering the
National Flood Insurance Program [here-
inafter "NFIP"]. 42 U.S.C. §§ 4001–4129
(2000).

NFIP is a federally-subsidized program
designed to make affordable flood insur-
ance available to the general public in
flood prone areas. *See Gowland v. Aetna,*
143 F.3d 951, 953 (5th Cir.1998). Numer-
ous reasons make it uneconomical for pri-
vate insurance companies, by themselves,
to provide flood insurance with reasonable
terms and conditions; therefore, Congress
authorized the creation of the NFIP "with
large-scale participation of the Federal
Government ....". 42 U.S.C. § 4001(b).
The Federal Government, through FEMA,
administers the NFIP "authoriz[ing] pri-
vate insurers to issue a Standard Flood
Insurance Policy" [hereinafter SFIP].

*Transamerican Office Furniture v. Travelers Property & Cas.*, 222 F.Supp.2d 689, 690 (E.D.Pa.2002).

FEMA utilizes the services of National Con–Serv, Inc. [hereinafter NCSI], as the fiscal servicing agent responsible for implementing the NFIP; NCSI was that servicing agent at all times relevant to this case. *See* 44 C.F.R. § 62.3(b). In spite of this delegation, FEMA maintains ultimate responsibility for handling all direct NFIP insurance policies. *See* 42 U.S.C. § 4072 (indicating that the appropriate party to sue is the Director of FEMA). FEMA is authorized to promulgate, by regulation, the terms and conditions of the flood insurance coverage provided for pursuant to the NFIP. *See* 42 U.S.C. § 4013.

Plaintiff Richard M. Rojek [hereinafter "Rojek"] purchased an SFIP which insured certain property against flood loss. This policy covered Rojek's seasonal residence located at 4519 South Concorde, Davenport, Iowa, as well as the contents of the property. The policy number was RL00007101, and it was in effect from February 15, 2001, until February 15, 2002. Policy No. RL000071701 insured Rojek's dwelling for up to $128,000 with a $1000 deductible, and the contents were insured for $14,800, also with a $1000 deductible.

On April 4, 2001, Rojek's insured property was inundated with waters from the Mississippi River. On or about May 3, 2001, Plaintiff's agent, Polly McDowell–Derby, notified FEMA of the April 4, 2001, flood which had affected Rojek's insured property. The purpose of this notification was to notify FEMA that Rojek had suffered a flood loss.

On May 3, 2001, FEMA informed Rojek that he was required to submit a proof of loss form to FEMA within 60 days of the loss. Then, one day later, on May 4, 2001, FEMA sent Rojek another letter reminding Rojek that his SFIP required the filing of a formal proof of loss form with FEMA within 60 days of the loss, a period of time set to expire on June 6, 2001.

On June 6, 2001, having not received a proof of loss form from Rojek, FEMA notified Rojek, again by way of letter, that his claim was denied and his file was being closed. The stated reason for denial was Rojek's violation of the terms and conditions of the SFIP in failing to submit a formal proof of loss to FEMA within 60 days of the loss.

On July 12, 2001, nearly 100 days after Rojek's loss, FEMA received a proof of loss form signed by Rojek, dated July 9, 2001. In this untimely proof of loss, Rojek claimed $55,183.49 in actual damages to his dwelling ($56,183.49 in covered damages less the $1000 deductible) and claimed $13,082.25 in covered damages for the personal property inside the dwelling ($14,082.25 less the $1000 deductible), for a total claim request of $68,265.74.

In response, at the end of July 2001, FEMA wrote a letter to Rojek informing him that the premium amount Rojek had paid to initiate his SFIP coverage may have been insufficient to purchase the amount of coverage requested. FEMA had also discovered by this time that it lacked sufficient information to adequately rate and calculate the flood insurance premiums for Rojek's property. Specifically, FEMA informed Rojek that if he supplied an elevation certificate to help rate his dwelling, FEMA would review his claim for payment. At the close of this letter, FEMA specifically stated that by offering to reconsider Rojek's claim, FEMA was "[w]aiving none, but reserving all rights under the policy . . . .".

Based on the supplemental information submitted by Rojek, on September 5, 2001, FEMA contacted Rojek by letter indicat-

ing that the correct amount of premium that Rojek ought to have paid for the amount of coverage requested was $3,554.00 more than what Rojek had originally paid. Pursuant to a valid regulation, FEMA indicated that if Rojek paid the additional premium, FEMA, in reconsidering his claim arising from the April 4, 2001, flood, would evaluate the claim based on the insurance coverage he originally requested.[1]

After having reconsidered Rojek's claim and despite the fact that Rojek had failed to file a timely proof of loss, FEMA tendered $13,353.09 for his building and $5,286.00 for the contents inside the building as coverage for his flood loss. In the October 23, 2001, letter accompanying these payments, FEMA again indicated it was "[w]aiving none, but reserving all rights and defenses under the policy . . . .".

The payment tendered by FEMA was $49,626.65 less than the amount that Rojek requested; so, on April 3, 2002, within the one-year time limit to file suit pertaining to any denial of a claim, Rojek filed suit against FEMA and NCSI.[2] On August 23, 2002, FEMA filed a Motion to Dismiss or Alternatively, Motion for Summary Judgment. FEMA's motion is more fully discussed throughout this order. On October 15, 2002, Rojek resisted FEMA's motions.

The essential element of Rojek's resistance is that, given this factual history and the various actions of agents and representatives of FEMA, the motions must be denied. Also, Rojek points to numerous actions taken by him to demonstrate his diligence in pursuing his flood loss.

For instance, while the flood occurred on April 4, 2001, and was of such severity as to prevent viewing of the property until approximately the second week in May 2001, Plaintiff had notified FEMA, through his insurance agent, of his flood loss around May 2, 2001. After FEMA had assigned Michael Bellmon to the case, Rojek quickly made contact with Bellmon, though a site visit to the property was impossible until the waters receded.

In mid-May, 2001, Rojek met Bellmon at the flooded property, and Bellmon gave Rojek a blank sheet of paper to list the personal property located in the flooded building. Rojek returned this form to Bellmon the very next day. Soon after that, Rojek contacted Bellmon, again to provide Bellmon more information regarding additional personal property items that had been located in a separate building on Rojek's flooded property. At this point, Rojek requested that Bellmon expedite his claim. Rojek alleges he was told by Bell-

1. *See* 44 C.F.R. Pt. 61, App. A(1) VII ¶ G, SFIP Art. VII(G); VII(G)(2)(b)(1), which, in part, discusses that if the premium received is not enough to have procured the kind and amount of coverage requested, FEMA will provide only that coverage that can be purchased with the amount received, that the policy can be reformed to increase the amount of coverage, and if, after a flood loss, it is discovered that the premium payment was not enough to buy the requested amount of coverage, a bill for the required additional amount will be sent, and, if paid within 30 days, the policy will be reformed to increase the amount of coverage to the originally requested amount effective to the beginning of the prior policy term.

2. See this Court's ruling dated October 18, 2002, granting NCSI's motion for summary judgment. Pursuant to the October 18, 2002, order, Rojek's pursuit of attorney fees, costs, and prejudgment interests is now considered moot, as Rojek in resistance to FEMA's motion to dismiss or in the alternative motion for summary judgment concedes these actions targeted NCSI, a now dismissed party, and not FEMA. See Rojek's Brief in Resistance to FEMA's Motion to Dismiss or in the Alternative Motion for Summary Judgment at page 10.

mon to relax, that everything was in order, and that he [Rojek] need not worry.

To further demonstrate his diligence, Rojek points out that between May 5, 2001, and June 3, 2001, he telephoned Bellmon at least seven times. After being notified that his claim was denied and his file closed, Rojek contacted Bellmon and was apparently told the letter from FEMA "was simply a form letter, that there were no problems with my claim, and that I should not worry and simply relax". Rojek alleges he was told the same thing by his own agent, McDowell–Derby, as well as by Donna Bowman at NCSI. Additionally, Rojek points out that once he received the proof of loss prepared by Bellmon, he immediately sent this document to NCSI (nearly 100 days after his loss). Between June 11, 2001, and July 9, 2001, Rojek points out that he placed at least thirteen telephone calls to Bellmon, four calls to his agent, McDowell–Derby, and at least one call to NCSI.

Rojek indicates that after he was told an elevation certificate was needed, he was then offered an apology by an NCSI claim adjuster for the neglect and delay in handling his claim and assured that once the certificate was received, the claim would be paid in full. After the adjustment to Rojek's premium was made and a request for the additional $3554.00 was made, Rojek apparently called a representative of NCSI, Inez Williams, who indicated that Rojek needed to pay this premium and then the claim would be paid in full. Rojek alleges it was only based on the representations that his claim would be paid in full that he made the additional premium payment. Furthermore, Rojek claims that throughout this entire process he relied upon statements from Bellmon and the representatives of NCSI, who all assured him that his claim was being handled properly.

Ultimately, Rojek's resistance is based on his belief that the motions must be denied in light of the actions of agents of FEMA. The crux of Rojek's argument in resistance is that, FEMA's actions, specifically FEMA's making partial payment to Rojek despite his having failed to file a timely proof of loss, equitably estops FEMA from relying upon the failure to timely submit a proof of loss.

Neither party requested a hearing for this matter, and a review of the filings and additional materials demonstrates a hearing would not materially help the Court reach its decision. For the reasons discussed herein, Rojek's claim against FEMA is dismissed in its entirety.

## APPLICABLE LAW AND DISCUSSION

Defendant FEMA's motion is styled as a motion to dismiss under two subsections of Rule 12 of the Rules of Civil Procedure, or alternatively, a motion for summary judgment. First, FEMA argues that because Rojek failed to follow every provision of his policy, that is, failing to file a proof of loss within 60 days of his loss, this Court lacks the necessary jurisdiction to pass upon the case. See Fed.R.Civ.P. 12(b)(1).

Second, although not entirely clear, apparently addressing Rojek's equitable estoppel argument, FEMA maintains this Court must dismiss Rojek's claim for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). In the alternative, FEMA has also moved for summary judgment, implying that there does not exist a genuine issue of material fact and that FEMA is entitled to a judgment in its favor as a matter of law. The Court necessarily focuses first upon the extent of its jurisdiction.

FEMA, by way of its director, has the responsibility for providing "by regulation

for general terms and conditions of insurability which shall be applicable to properties eligible for flood insurance coverage ....". 42 U.S.C. § 4013(a). The regulations, having by now long been promulgated, are contained in 44 C.F.R. §§ 59.1–75.14 (2001). These regulations dictate that all insurance offered under the NFIP is subject to the Act, regulations, and terms and conditions of the SFIP. 44 C.F.R. § 61.4(a)-(b). The applicable SFIP governing this case is found, word for word, in the regulations. *Compare* Exhibit A attached to Rojek's original complaint *with* Appendix A(1) to 44 C.F.R. Part 61. Citation to the SFIP in this order cites to the Code of Federal Regulations.

According to the promulgated regulations, the SFIP must be used for the NFIP, and "no provision ... shall be altered, varied, or waived other than by the express written consent of the Administrator through the issuance of an appropriate amendatory endorsement, approved by the Administrator as to form and substance for uniform use". 44 C.F.R. § 61.13(d). This regulation is expressly incorporated into the SFIP itself. *See* Appendix A(1) to 44 C.F.R. Part 61 at VII ¶ D. This provision addresses whether or not, by making partial payment to Rojek, FEMA waived the proof of loss requirement of the SFIP. *Id.* FEMA expressly did not, nor could its conduct be construed as such a waiver.

With respect to the issues in this case, the most important provision of the SFIP is the provision laying out the procedure to follow in case of a flood loss. *See* Appendix A(1) to 44 C.F.R. Part 61 at VII ¶ J(4) (stating that "[w]ithin 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, ...."). Significantly, the SFIP further clarifies FEMA's obligations to the insured as it pertains to the requirement of filing a proof of loss. *See* Appendix A(1) to 44 C.F.R. Part 61 at VII ¶ J(7) which states:

> The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you to complete it. However, this is a courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

Another SFIP provision of particular relevance to the issue in this case concerns the conditions that must be met before one may sue the director of FEMA. *See* Appendix A(1) to 44 C.F.R. Part 61 at VII ¶ R (indicating that "[y]ou may not sue us to recover money under this policy unless you have complied with all the requirements of the policy."). As recently discussed by the United States Court of Appeals for the Eighth Circuit, Rojek's policy "is more than a mere contract: it is also a regulation of the Federal Emergency Management Agency, stating the conditions under which federal flood-insurance funds may be disbursed to eligible policy holders". *See Mancini v. Redland Ins. Co.*, 248 F.3d 729, 733 (8th Cir.2001). The Supreme Court of the United States has observed that when considering disbursements of funds through federal insurance programs, "courts must strictly construe the statutory or regulatory limits" providing for the disbursements. *Id.* (citing to *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385–86, 68 S.Ct. 1, 92 L.Ed. 10 (1947)).

■ The issues raised in this case, whether failure to file a timely proof of loss is fatal to one's ability to sue FEMA and whether the doctrine of equitable estoppel prevents FEMA from relying on the failure to meet the proof of loss requirement as a defense, have been previ-

ously addressed by the Eighth Circuit Court of Appeals, as well as other courts. *See Mancini,* 248 F.3d 729 (8th Cir.2001); *see also Forman v. FEMA,* 138 F.3d 543, 545 (5th Cir.1998) (indicating the court had "serious reservations about whether ... the proof of loss was timely", though ultimately finding the proof of loss, even if timely, was inadequate, and going on to find that equitable estoppel did not bar FEMA from asserting, as a defense, failure to meet the proof of loss requirement.); *Wagner v. Director, FEMA,* 847 F.2d 515, 520 (9th Cir.1988) (dismissing the actions by those plaintiffs who failed to file a proof of loss within 60 days and finding equitable estoppel did not prevent FEMA from using this as a defense as to those plaintiffs); *Howard v. Director of FEMA,* 960 F.Supp. 1095, 1101 (S.D.Miss. 1996) (granting summary judgment because plaintiff did not file a proof of loss and equitable estoppel did not prevent FEMA from requiring compliance with the terms of the SFIP policy.). The *Mancini* court concluded that the proof of loss provision in the SFIP is a regulatory limit upon the disbursement of funds through federal insurance programs and therefore must be strictly construed. *Mancini,* 248 F.3d at 733. Moreover, any disbursement would be paid out of the federal treasury; and, filing a proof of loss within 60 days of the loss, and complying with all policy requirements or lose the right to sue under the policy, function as "conditions precedent to a waiver by the federal government of its sovereign immunity". *Id.* at 733–34 (quoting *Wagner v. Director,*

*FEMA,* 847 F.2d 515, 518 (9th Cir.1988)). This provides another, independent, reason why the proof of loss requirement must be strictly construed. *Id.* (citing *Wagner,* 847 F.2d at 518).

■ With this rationale in mind, this Court concludes that Rojek's failure to file a proof of loss within 60 days of April 4, 2001, dictates the outcome of this case. Although Rojek, throughout his complaint and resistance, emphasizes his diligence and alleges he relied on the actions of FEMA's agents to his complete detriment, Rojek's diligence did not include his filing a timely proof of loss.

Very clearly, the SFIP unambiguously indicates that the creation of the proof of loss is solely the claimant's responsibility. *See* Appendix A(1) to 44 C.F.R. Part 61 at VII ¶ J(7); *see also* Appendix A(1) to 44 C.F.R. Part 61 at VII ¶ J(5) (instructing the claimant that "[i]n completing the proof of loss, *you* must use *your* own judgment concerning the amount of loss and justify that amount") (emphasis added). Additionally, Rojek is no stranger to the policy requirements and procedures mandated in the SFIP that must be followed to receive insurance funds.[3]

" 'The threshold inquiry in every federal case is whether the court has jurisdiction' and the appellate court has 'admonished district judges to be attentive to a satisfaction of jurisdictional requirements in all cases'." *See Locke v. United States,* 215 F.Supp.2d 1033, 1036 (D.S.D.2002) (quoting *Rock Island Millwork Co. v. Hedges-*

---

**3.** In 1997, Rojek applied for and apparently received flood insurance coverage for flood damage. *See* Attachment J to Declaration of James S.P. Shortley in support of FEMA's Motion to Dismiss or Alternatively Motion for Summary Judgment (explaining to Rojek that the partial denial of his claim arises from "several items allowed for in [a 1997 flood insurance coverage request that] have been duplicated in your current loss ... and [FEMA is] unable to allow for the same item twice without proof that those previously paid items were in fact repaired/replaced"). For these reasons collectively, Rojek cannot claim ignorance or unfamiliarity with the procedures he must follow to ensure any flood loss would be covered.

*Gough Lumber Co.*, 337 F.2d 24, 26–7 (8th Cir.1964)). Judicial economy demands that the issue of jurisdiction be decided at the onset. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir.1990).

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993). This Court must distinguish between a "facial attack" and a "factual attack" when deciding FEMA's 12(b)(1) motion. *See Osborn*, 918 F.2d at 730, at n. 6 (citing to *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)). The Court, in this case, is presented with a 12(b)(1) factual challenge since FEMA's challenge is whether or not failure to timely file a proof of loss divests this Court of jurisdiction to hear this case. "The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir.1993); *see also Osborn*, 918 F.2d at 729, n. 4.

In this case, the parties have submitted declarations, letters, forms, and other materials in support of and in resistance to FEMA's motions. After having considered such evidence as it relates to the jurisdictional challenge, this Court, as discussed, finds that Rojek failed to file a timely proof of loss, which implicitly means he has not complied with all policy requirements. Having failed to do so divests Rojek of the right to sue under the policy as these requirements function as "conditions precedent to a waiver by the federal government of its sovereign immunity". *See Mancini*, 248 F.3d at 733. Furthermore, "[t]he policy, strictly construed permits [FEMA] to deny coverage where an insured has failed to submit a signed and sworn statement of the amount claimed, and it divests a non-complying insured of the right to sue". *Id.* at 735.

## CONCLUSION

The Court finds it lacks the requisite jurisdiction over this case. FEMA's motion to dismiss pursuant to 12(b)(1) is **granted**, and the case is **dismissed**. Accordingly, the Court does not address the alternative motion for summary judgment.[4]

**IT IS HEREBY ORDERED.**

---

4. Dismissing Rojek's case pursuant to Fed. R.Civ.P. 12(b)(1) means this Court does not evaluate Rojek's equitable estoppel argument under a summary judgment standard. *See* Fed.R.Civ.P. 56(c); *see also* Fed.R.Civ.P. 12(b)(6). The Court does point out, however, that while appealing under the facts in this case, Rojek's equitable estoppel argument against FEMA would not stand. The Supreme Court has long and consistently held that "the Government may not be estopped on the same terms as any other litigant". *Mancini*, 248 F.3d at 735 (quoting *Heckler v. Community Health Serv. of Crawford County, Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)). In this case, Rojek requests that "we apply the doctrine of equitable estoppel to prevent the enforcement of a federal regulation". *Id.* "One who would invoke estoppel against the government for the acts of its agents bears a heavy burden of proof." *Reeves v. Guiffrida*, 756 F.2d at 1141, 1142 (5th Cir.1985). While affirmative misconduct might justify estoppel against the government in some circumstances, this misconduct must go beyond mere negligence. *See Morgan v. Heckler*, 779 F.2d 544, 545 (9th Cir.1985). Even then, "estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by im-

position of the liability". *Id.* "Opinions have differed on whether [the Supreme Court] has ever accepted an estoppel claim in other contexts, ... not a single case has upheld an estoppel claim against the Government for the payment of money." *Office of Pers. Mgmt. v. Richmond,* 496 U.S. 414, 426–27, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). This result arises from Art. I § 9 cl. 7 of the United States Constitution, the Appropriations Clause, which provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." In this case, any and all claims are administered by FEMA and paid from the National Flood Insurance Fund, a fund maintained in the Department of the Treasury. *See* 42 U.S.C. § 4017. Pursuant to the demands of the Appropriations Clause, "judicial use of the equitable doctrine of estoppel cannot grant ... a money remedy that Congress has not autho-

rized". *Office of Pers. Mgmt.,* 496 U.S. at 426, 110 S.Ct. 2465. As found by the court in *Mancini,* the proof of loss requirement in the SFIP defines the limits of congressional appropriation under the NFIP; thus, for this reason, Rojek's estoppel argument would necessarily fail. *Mancini,* 248 F.3d at 735.