*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0260p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DONALD EVANOFF,

*Plaintiff-Appellant,*

*v.*

No. 07-4187

THE STANDARD FIRE INSURANCE COMPANY;
READYCLEAN, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-00631—George J. Limbert, Magistrate Judge.

Argued: June 10, 2008

Decided and Filed: July 18, 2008

Before: KEITH, GRIFFIN, and GIBSON, Circuit Judges.[*]

_____

**COUNSEL**

_____

**ARGUED:** David A. Freeburg, McFADDEN & FREEBURG CO., Cleveland, Ohio, for Appellant. Eric M. Hurwitz, STRADLEY, RONON, STEVENS & YOUNG, Cherry Hill, New Jersey, for Appellees. **ON BRIEF:** David A. Freeburg, McFADDEN & FREEBURG CO., Cleveland, Ohio, for Appellant. Ed E. Duncan, TUCKER, ELLIS & WEST, Cleveland, Ohio, for Appellees.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge. Plaintiff Donald Evanoff appeals an order of the district court granting summary judgment in favor of defendants The Standard Fire Insurance Company and Readyclean, Inc. (collectively "Standard Fire"). Evanoff argues that the district court erred in holding that no genuine issue of material fact exists regarding Evanoff's compliance with the requirements of the Standard Flood Insurance Policy issued to him by Standard Fire. He contends further that the court abused its discretion in failing to allow him to conduct additional discovery before the court granted Standard Fire's motion for summary judgment. Finding Evanoff's arguments to lack merit, we affirm.

---

[*] The Honorable John R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

I.

Plaintiff Donald Evanoff owns a condominium unit located in North Royalton, Ohio.  On August 20, 2004, Evanoff purchased a Standard Flood Insurance Policy ("SFIP") from Standard Fire to provide flood coverage for his condominium unit and its contents.  The terms of Evanoff's SFIP, like all federally-subsidized flood insurance plans purchased through the National Flood Insurance Program ("NFIP"), were governed by the Code of Federal Regulations.  44 C.F.R. § 61.4.  Specifically, the CFR and Evanoff's SFIP provided that in the case of a flood loss occurring to insured property, Evanoff was required to:

> Within 60 days after the loss, *send us a proof of loss*, which is your statement of the amount you are claiming under the policy *signed and sworn to by you*, and which furnishes us with the following information:
>
> a.      The date and time of loss;
>
> b.      A brief explanation of how the loss happened;
>
> c.      Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
>
> d.      Details of any other insurance that may cover the loss;
>
> e.      Changes in title or occupancy of the insured property during the term of the policy;
>
> f.      Specifications of damaged buildings and detailed repair estimates;
>
> g.      Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
>
> h.      Details about who occupied any insured building at the time of loss and for what purpose; and
>
> i.      The inventory of damaged property described . . . above.

44 C.F.R. § 61, App. A(2)(J)(4) (emphasis added).

Evanoff renewed his SFIP in August 2005.  On June 22, 2006, excessive rain flooded Evanoff's property, causing damage to his condominium unit.  He notified Standard Fire of the damage immediately, but after Standard Fire's independent adjuster advised that the damage was covered under the condominium association's policy, Standard Fire denied Evanoff's claim.  The condominium association subsequently notified Evanoff that it did not carry insurance for flood damage, requiring individual unit owners to carry their own insurance.  Evanoff's insurance agent forwarded this information to Standard Fire, as well as a loss notice and an estimate of $39,752.36 that he had received from a contractor.

Standard Fire's adjuster, meanwhile, completed his inspection and prepared a report recommending a payment of $3,440.93 for damage to Evanoff's property.  The adjuster sent plaintiff a proof of loss form in that amount, which Evanoff refused to sign and return.  The 60-day deadline specified in the SFIP, and mandated by 44 C.F.R. § 61, App. A(2)(J)(4), required Evanoff to submit a signed and sworn proof of loss by August 21, 2006.  After that date passed, Standard Fire wrote Evanoff and informed him that because he had failed to submit a proof of loss within 60 days from the date of loss, Standard Fire was denying plaintiff's flood claim.  Standard Fire stated further that

"[i]f you do wish to pursue your flood claim, and if you send us a signed and complete Proof of Loss, we'll review that, and then we'll ask the Administrator to waive the 60-day Proof of Loss requirement for your claim." Evanoff did not respond to the letter.[1]

On January 19, 2007, Evanoff filed a complaint against defendants in the Court of Common Pleas of Cuyahoga County. Defendants removed the action to federal court and on April 16, 2007, the parties consented to the magistrate judge's exercise of jurisdiction over the case. Shortly thereafter, the court entered a case management conference order, requiring defendants to file any motion for summary judgment by June 29, 2007. No deadline for discovery was set.

After defendants moved for summary judgment, the magistrate judge granted the motion, holding that Evanoff had failed to establish that a genuine issue of material fact exists regarding whether he had submitted a proper proof of loss, as "there is no evidence that Plaintiff ever provided a sworn statement as required by [] the terms of the SFIP." The court further rejected Evanoff's argument that he was excused from submitting the proof of loss because Standard Fire allegedly repudiated the contract. This timely appeal followed.

## II.

Because it is not cost-effective for "private insurance companies to provide flood insurance with reasonable terms and conditions to those in flood prone areas," Congress established the NFIP in 1968 to subsidize insurance coverage and allow residents to receive such coverage at or below actuarial rates. *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). As we have elsewhere explained the historical backdrop and regulatory framework to the NFIP:

> With the passage in 1968 of the National Flood Insurance Act, 42 U.S.C. §§ 4001 *et seq.*, Congress established the National Flood Insurance Program. Under this program homeowners can buy "Standard Flood Insurance Policies" that promise indemnification for damage caused by flood or rising waters. In 1973, Congress expanded flood protection (via the Flood Disaster Protection Act, 42 U.S.C. § 4121) to include any "collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels." 42 U.S.C. § 4121(c).
>
> * * *
>
> The Flood Insurance Administration, a component of the Federal Emergency Management Administration ("FEMA"), administers the National Flood Insurance Program pursuant to the authority granted by 42 U.S.C. § 4081(a). FEMA created the "Write Your Own" program in 1983. 44 C.F.R. §§ 62.23-.24. Under this program, private insurance companies, such as [Standard Fire], issue Standard Policies as fiscal agents of the government. 44 C.F.R. § 62.23. FEMA has the sole authority to prescribe the terms and conditions of the Standard Policy, and the Standard Policy must be issued without alteration (except by the written consent of the Federal Insurance Administrator). 44 C.F.R. §§ 61.4(b), 61.13(d), 62.23(c), 62.23(d).

*Neuser v. Hocker*, 246 F.3d 508, 509-10 (6th Cir. 2001) (internal footnote omitted). *See also Bruinsma v. State Farm Fire and Cas. Co.*, 410 F. Supp. 2d 628, 631-32 (W.D. Mich. 2006) (providing cogent description of NFIP program). Consequently, Standard Fire functions here as a

---

[1]Evanoff denies receiving this letter, dated October 17, 2006, but does not dispute that Standard Fire sent the letter.

fiscal agent of the United States, rather than as a purely private insurance company, 42 U.S.C. § 4071(a)(1), and Evanoff's SFIP is funded by the federal treasury. *See Mancini v. Redland Ins. Co.*, 248 F.3d 729, 733 (8th Cir. 2001); *Gowland*, 143 F.3d at 953.

Standard Fire's motion for summary judgment was premised on its claim that Evanoff did not timely provide a proof of loss, as required by plaintiff's SFIP and 44 C.F.R. § 61, App. A(2)(J)(4). Evanoff argues on appeal that he provided "each and every item required" by the SFIP, including a letter that contained his signature. Evanoff essentially concedes that his letter was not notarized or otherwise sworn, but contends that because any false statement made to Standard Fire (acting as an agent of the government) would be subject to criminal penalties under 18 U.S.C. § 1001, his signed and faxed letter satisfied the policy's requirement.

On this issue, we find the Eighth Circuit's opinion in *Mancini* to be on point and persuasive. In *Mancini*, the plaintiffs purchased a SFIP from the defendant insurer for their farm house. 248 F.3d at 731. After a snow melt and the use of an overflow pump caused the plaintiffs' home to flood, the defendant sent an adjuster to inspect the property. *Id.* After the defendant's adjuster provided plaintiffs with an estimate and a proof of loss form, and instructed the plaintiffs that the form must be signed and notarized, the plaintiffs forwarded the form – unsigned and without notarization – to the defendant insurer. *Id.* at 732. The insurer refused to pay the plaintiffs' claim, resulting in a lawsuit filed in federal district court. After a bench trial, the district court found for the plaintiffs, reasoning that by submitting the proof of loss forms to the defendant, along with an accompanying letter bearing their signature, the plaintiffs had substantially complied with the requirements of the SFIP to provide a signed and sworn proof of loss. *Id.* at 733.

On appeal, the Court of Appeals for the Eighth Circuit reversed. Writing for a unanimous court, Judge Arnold explained that due to the "special nature" of the SFIP – that is, the federal government's role in subsidizing the flood insurance plan – the plaintiffs were required to "show actual and complete compliance with this requirement: it is not sufficient to show that they substantially complied or that the insurer suffered no prejudice." *Id.* at 734 (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947), for the proposition that "'the duty of all courts to observe the conditions defined by Congress for charging the public treasury' imposes on citizens a corresponding duty to 'turn square corners when they deal with the Government'"). The court was not persuaded by the plaintiffs' claim that their signature on the accompanying letter was sufficient, holding that the plaintiffs "were required to do more than merely submit a set of figures together with a signed statement not rejecting or nullifying those figures. They had to submit a signed statement as to the amount claimed under the policy. They simply did not do so." *Id.* at 734-35.

The court also rejected the plaintiffs' argument – identical to the one raised by Evanoff here – that the proof of loss was rendered sworn due to the possibility of criminal penalties attendant to any material false statements made in materials submitted to the insurer:

> Nor are we persuaded that the proof of loss was sworn. A false statement, to be sure, would have been punishable as a crime under 18 U.S.C. § 1001, but that is true of any material false statement to a federal agency with respect to a matter within its jurisdiction. The mere existence of this statute does not mean that every such statement is "sworn." The District Court held that "sworn" means "verified," and that the proof of loss was verified by the adjuster. We respectfully disagree with this reasoning. Apart from any other reason, it is the insured, not the adjuster, who must swear to the proof of loss.

*Id.* at 735.

Although *Mancini* is not binding on us, we agree with and adopt its reasoning. As we have noted previously, "federal courts have consistently held that the proof of loss requirement is to be strictly enforced." *Neuser*, 246 F.3d at 511. There is no evidence in the record that Evanoff returned a signed and sworn proof of loss form to Standard Fire before the expiration of the 60-day period. Moreover, we think it unwise to accept plaintiff's argument that the possibility of criminal penalties under 18 U.S.C. § 1001 renders any signed statement submitted to the insurer "sworn"; to hold otherwise would effectively delete FEMA's requirement in 44 C.F.R. § 61, App. A(2)(J)(4) that a proof of loss statement must be "signed and sworn." As we are required to interpret the SFIP at issue strictly, we cannot accept Evanoff's claim that he substantially complied with the terms of the policy.

## III.

Equally unavailing is Evanoff's next argument that he is excused from complying with the policy's proof of loss requirement because Standard Fire allegedly repudiated the policy by initially denying plaintiff's claim. As the Restatement explains, "'repudiation' is a 'statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach.'" *Mobil Oil Exploration & Producing Southeast v. United States*, 530 U.S. 604, 608 (2000) (quoting Restatement (Second) of Contracts § 250 (1979)). "Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of [a contract's] clause" may constitute a breach of contract, "but it does not amount to a renunciation or repudiation of the policy." *Mobley v. New York Life Ins. Co.*, 295 U.S. 632, 638 (1935).

Evanoff relies on the Fourth Circuit's opinion in *Studio Frames Ltd. v. Std. Fire Ins. Co.*, 369 F.3d 376 (4th Cir. 2004). However, we do not view *Studio Frames* as being particularly helpful to plaintiff's position because it stands for the limited proposition that the doctrine of repudiation may apply to SFIPs. *Id.* at 381 ("Here we must consider . . . whether the otherwise binding requirement that Studio Frames file a proof of loss could be legally excused by a repudiation of the SFIP by Standard Fire."). This point of law is of little consequence to the present case because the sole evidence Evanoff offers in support of his argument is Standard Fire's initial denial of his claim. It is well-settled that the denial of an insurance claim does not amount to the repudiation of the policy. *New York Life Ins. Co. v. Viglas*, 297 U.S. 672, 676 (1936). Moreover, the record indicates that Standard Fire continued to consider Evanoff's claim, even after its initial denial. In a letter dated October 17, 2006, Standard Fire notified Evanoff after its initial denial that it had reopened plaintiff's claim, explained that it was denying the claim because Evanoff had failed to provide a proof of loss, and offered to ask the Administrator to waive the 60-day deadline if plaintiff would provide a completed proof of loss.

Therefore, we affirm the district court's ruling that Standard Fire did not repudiate its policy with plaintiff and that a genuine issue of material fact does not exist on this issue.

## IV.

Finally, Evanoff argues that the magistrate judge erred in granting defendants' motion for summary judgment prematurely before all discovery was completed. We review the trial court's ruling on discovery matters for an abuse of discretion. *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999).

Plaintiff contends on appeal that he had "no opportunity for discovery, the court set dates for filing of summary judgment motions at the case management conference, and no discovery was permitted or contemplated by the court." This assertion is not supported by the record. The case management conference order entered by the magistrate judge did not prohibit discovery, but merely

declined to schedule a discovery cutoff date. Moreover, both parties had ample opportunity to conduct discovery, as defendants removed this case to federal court on March 2, 2007, nearly four months prior to the deadline for summary judgment. Had plaintiff needed more time to conduct discovery, he could have filed a motion with the magistrate judge. There is no indication in the record, however, that he did so, and, accordingly, there is no basis for concluding that the magistrate judge abused his discretion in terminating discovery by granting defendants' motion for summary judgment.

V.

For these reasons, we affirm the order and amended judgment of the district court.