*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0072p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

NAHZY BUCK,

        *Plaintiff-Appellant,*

    *v.*

THOMAS M. COOLEY LAW SCHOOL,

        *Defendant-Appellee.*

No. 09-1508

_____

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 07-01230—Janet T. Neff, District Judge.

Argued: January 14, 2010

Decided and Filed: March 17, 2010

Before: KENNEDY, COLE, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Nicholas Roumel, NICK ROUMEL & ASSOCIATES, Ann Arbor, Michigan, for Appellant. Megan K. Cavanagh, GARAN LUCOW MILLER, P.C., Detroit, Michigan, for Appellee. **ON BRIEF:** Nicholas Roumel, NICK ROUMEL & ASSOCIATES, Ann Arbor, Michigan, for Appellant. Megan K. Cavanagh, GARAN LUCOW MILLER, P.C., Detroit, Michigan, Michael P. McCasey, GARAN LUCOW MILLER, P.C., Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

    CORNELIA G. KENNEDY, Circuit Judge. Plaintiff appeals from the district court's dismissal of her lawsuit against her former law school as barred by res judicata and a lack of causation. She previously litigated earlier acts of discrimination against her law school in Michigan state courts, and had secured a preliminary injunction allowing her to attend classes. She was then dismissed from the law school on academic grounds. Because

plaintiff should have supplemented her complaint in state court with claims that arose during the pendency of that suit, she is precluded by res judicata from raising these claims now. Therefore, we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Thomas M. Cooley Law School admitted plaintiff Nahzy Buck as a student in December 1999, to begin classes in May 2000. Almost immediately, plaintiff began to struggle with her coursework. Although she sought assistance from university officials and the school's Academic Resource Center, plaintiff's grades were poor and she was placed on academic probation. She then was evaluated by a psychologist, Dr. Ostien, who concluded that the plaintiff has a learning disorder in cognitive processing speed and a generalized anxiety disorder. Dr. Ostien recommended that plaintiff receive extended time for taking exams and that she only carry two courses per semester. Defendant acquiesced to the first condition, but did not allow plaintiff to drop a course to reduce her course load to two. After her third term, following two terms of academic probation, plaintiff had a GPA of 1.43. She was then expelled from law school on June 6, 2001.

On April 12, 2002, plaintiff filed a lawsuit in Michigan state court. She alleged that defendant refused to offer her assistance or provide her with accommodations for her disability, and misled plaintiff as to her ability to obtain accommodations. She alleged that defendant had breached a fiduciary duty it owed to her, violated the Michigan Consumer Protection Act and the Michigan Persons with Disabilities Civil Rights Act, and deprived her of Due Process under the federal and Michigan constitutions.

On April 15, 2002, the state trial court entered an ex parte temporary restraining order that defendant was "RESTRAINED AND ENJOINED FROM excluding and prohibiting in any manner, Plaintiff's registration for, attendance at, and participation in such classes as are offered by Defendant Thomas M. Cooley Law School to its other, similarly situated law student [sic]." The order notes that it is "granted without notice to prevent further interruption and delay in Plaintiff's legal education." After a hearing, the court converted the restraining order into a preliminary injunction with substantially similar mandatory language. Defendant did not appeal either the restraining order or the preliminary injunction, and plaintiff attended classes until December 2005.

On November 4, 2004, the state court granted summary disposition on several counts, but denied summary disposition on plaintiff's claim of discrimination under the Michigan Persons with Disabilities Civil Rights Act. Defendant appealed the partial denial of summary disposition to the Michigan Court of Appeals. In March 2005, while the state appeal was pending, plaintiff obtained leave from the state trial court to file a supplemental complaint with allegations of misconduct that had occurred since 2002. However, the state trial court allowed supplementation of events only through the end of April 2002. The plaintiff had sought to also add allegations that defendant's faculty and staff had treated her poorly by, among other things, accusing her of cheating on a homework assignment, denying her request to be in the same study group as her husband, giving her poor grades, and being abrupt with her. The trial court denied this request because it concluded that such facts, if true, could not provide the basis for plaintiff's retaliation claim. The state trial court then agreed to stay proceedings during the appeal. Plaintiff filed her supplemental complaint on April 27, 2005.

While this state litigation was ongoing, plaintiff matriculated under the terms of the injunctive order, hopeful of a January 22, 2006 graduation date. Plaintiff alleges that defendant undertook preparations for plaintiff's graduation in the fall of 2005, fitting plaintiff for a commencement cap, verifying her name for her diploma, and taking her senior portrait. Notwithstanding this, plaintiff also alleges that she experienced a hostile environment throughout her studies, including in her final term, and this hostility caused her additional anxiety, which in turn interfered with her class performance. She claims the defendant initially denied her registration when she presented it with the injunctive order on April 22, 2002, and expressed hostility towards her registration for classes; defendant's representative refused to settle with her during mediation; Registrar Sherida Wysocki refused to talk to plaintiff on multiple occasions, including on July 7, 2005; Dean of Enrollment and Student Services Paul Zelenski told plaintiff in May 2000 that she "can never practice law here in the U.S. of A., and on October 14, 2005 told the registrar in plaintiff's presence that plaintiff "is not going to graduate this term!"; Charles Cercone, Associate Dean of Students, told one of plaintiff's professors in June 2004 not to change plaintiff's grade in her course; her academic advisor from 2003 to 2005 refused to provide her advice, causing her to have to obtain a new advisor; she was forced to complete two exams on December 13, 2003,

which with her extra time required her to spend 11 straight hours on the exams; her Administrative Law exam from the summer of 2005 contained a notation that she was given 5.5 hours to complete the test; and in September 2005 she was advised to drop her appeal of her Administrative Law grade or risk it be deemed frivolous.

Before the fall semester of 2005, which plaintiff had hoped to be her last, her grades ranked her tenth from the bottom of her class. That semester, she received an "F" in her Business Organizations class, as well as poor grades in her other classes that term, Secured Transactions and her retake of Federal Administrative Law. Registrar Wysocki advised plaintiff to file an expedited appeal of these grades if she hoped to graduate. Plaintiff attempted to obtain her exams for the appeal, but the original multiple-choice score sheet had been lost. Nevertheless, on January 11, 2006, plaintiff filed an expedited appeal for all three of her courses. Her appeal was denied on January 18 for failing to comply with a format requirement. This caused her grade point average in required courses to remain below 2.0, the minimum GPA required to graduate. She requested that she be allowed to void her Business Organization's grade under defendant's policy that allows students to void two grades during their matriculation. This request was denied because even if she voided the Business Organization's grade, her GPA in required courses would be 1.98, still below the minimum. She also was left two credits shy of the ninety credits required to graduate. As a result, defendant did not allow her to graduate in January 2006, and she was dismissed from the law school in March 2006.

On June 20, 2006, the Michigan Court of Appeals reversed the trial court's denial of summary disposition, and remanded with instructions to grant defendant summary disposition on all claims. *Buck v. Thomas M. Cooley Law School*, 272 Mich. App. 93, 725 N.W.2d 485 (2006). The state appellate court noted that although defendant had not appealed the injunctive orders, the court believed that injunctive relief was not appropriate in this case because plaintiff had an adequate remedy at law and because the restraining order altered, rather than preserved, the status quo. *Id.* at 98 n.4, 725 N.W.2d at 488 n.5. The Michigan Supreme Court denied leave to appeal on November 29, 2006. *Buck v. Thomas M. Cooley Law School*, 477 Mich. 943, 723 N.W.2d 858 (2006) (table). On remand, plaintiff brought a renewed motion for injunctive relief, citing her dismissal from the law

school.[1]  On January 24, 2007, the state circuit court granted defendant's motion for summary judgment in full and dismissed plaintiff's claims with prejudice.

Plaintiff filed this federal action on December 10, 2007, alleging violation of the Americans with Disabilities Act (ADA), violation of the Michigan Persons with Disabilities Civil Rights Act, and breach of various implied contracts.  Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the lawsuit was barred by the preclusive effect of the prior state court litigation.  Alternatively, defendant argued that the harm alleged was not causally related to any wrongful conduct because the Michigan Court of Appeals concluded that plaintiff should not have been granted injunctive relief, and without this relief she would not have been a student at the law school during the years of which she complains.  Moreover, defendant argued that the plaintiff's claims for breach of contract in count six failed to state a claim.  In a written opinion, the district court accepted each of defendant's arguments, and dismissed plaintiff's complaint.  Plaintiff appeals.

### STANDARD OF REVIEW

"We review de novo a district court's application of the doctrine of res judicata," *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (citing *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994)), as well as its decision to grant a Rule 12(b)(6) motion to dismiss, *Ind. State Dist. Council Of Laborers And Hod Carriers Pension And Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942 (6th Cir. 2009) (citing *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008)).  "[W]e accept as true all non-conclusory allegations in the complaint and determine whether they state a plausible claim for relief." *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009)).  Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.  *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).

---

[1]Although this is not part of the record in this case, counsel for both parties conceded this fact during oral argument.

**DISCUSSION**

## I. Res Judicata

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). Plaintiff's prior litigation took place in Michigan, which employs a "broad view of res judicata,*" In re MCI Telecommunications Complaint*, 460 Mich. 396, 431, 596 N.W.2d 164, 183 (1999), that "'bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first,'" *Abbott*, 474 F.3d at 331 (quoting *Adair v. State*, 470 Mich. 105, 121, 680 N.W.2d 386, 396 (Mich. 2004)). Res judicata "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* (internal quotation marks omitted). "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient trial unit." *Adair*, 470 Mich. at 125, 680 N.W.2d at 398 (internal quotations omitted; emphasis and alteration in original). The burden of proving res judicata is on the party asserting it. *Abbott*, 474 F.3d at 331.

The parties agree that the state litigation was resolved on the merits and involved the same parties as the present lawsuit. The focus of the parties' dispute is whether the claims presented by this lawsuit were or should have been resolved in the prior suit.

The allegations regarding defendant's treatment between 2002 and her second dismissal by the law school in 2006 are part of the same transaction – alleged misconduct and discriminatory animus by defendant towards her as a law student – as the allegations giving rise to her first lawsuit. Plaintiff alleged that defendant tried to deny her accommodations and otherwise interfered with her studies in her original complaint, her supplemental complaint, and her federal complaint. Many of the factual allegations she raises in this lawsuit are identical to those she attempted to add to her state court litigation. For example, she attempted to obtain leave from the state court to add allegations that her academic advisor refused to provide her advice after the court's injunction required her

readmission during the pendency of the lawsuit and that Cercone had instructed her Immigration Law professor not to change her grade. She makes these same allegations in her federal complaint.

Plaintiff argues that her federal complaint alleges many facts that had not occurred at the time that she had filed her state court complaint. She correctly observes that these facts were not – and could not have been – included in plaintiff's original state court complaint when it was filed in 2002. The Michigan Court Rules require only that a pleader "join every claim that the pleader has against that opposing party *at the time of serving the pleading*" arising out of the transaction that is the subject matter of the action. Mich. Ct. R. 2.203(A) (emphasis added).

Nevertheless, under Michigan law, a plaintiff has a duty to supplement her complaint with related factual allegations that develop "during the pendency of" her state suit or have them barred by res judicata. *See Adair*, 470 Mich. at 125, 680 N.W.2d at 398; *see also Dubuc v. Green Oak Twp.*, 312 F.3d 736 (6th Cir. 2002). The Michigan Court Rules allow a party to supplement a complaint with facts that were not available to it at the onset of the litigation. *See* Mich. Ct. R. 2.118(E). In *Dubuc*, we held that res judicata barred suit by a plaintiff claiming retaliation by a municipality because the plaintiff had previously complained of retaliation by the same municipality. We concluded that "[w]hen the alleged additional manifestation of retaliatory animus occurs before adjudication on the merits of the initial suit, . . . the victim is obliged to amend his or her initial complaint to add these new allegations." *Dubuc*, 312 F.3d at 750. We emphasized that "[t]he key issue is whether Appellant could have amended his complaint in [the earlier proceeding] to include these new manifestations of alleged retaliation." *Id.* at 749; *see also Adair*, 470 Mich. at 126, 680 N.W.2d at 398 (considering whether "plaintiffs, exercising due diligence, could have filed" their claims during the previous litigation).

Here, plaintiff was able to file a supplemental complaint on April 27, 2005. She is therefore barred in this lawsuit from relying on any facts that she could have brought at that time but did not. It is true the trial court had not allowed her to supplement her complaint with all proposed factual allegations that she wished to add at that time. This was not due to the time of the filing of the motion, however, but because the trial court found that the

allegations did not support plaintiff's cause of action. Plaintiff failed to appeal this adverse ruling, and cannot challenge it in federal court now.

Moreover, plaintiff is barred from litigating matters that occurred prior to the dismissal of her lawsuit in 2007 because she had an opportunity to seek permission from the state trial court to amend her complaint to add recent events after remand, before judgment was entered. It appears not only that plaintiff could – and therefore should – have sought to supplement her complaint with post-2005 facts on remand, but that she actually attempted to and failed. At oral argument, counsel indicated that after plaintiff's case was remanded to the state trial court at the end of 2006, plaintiff brought to the court's attention factual allegations from 2006, including her dismissal from the law school. Although the trial court did not allow this amendment, under res judicata principles, plaintiff's recourse from the state trial court's adverse ruling after remand was to file an appeal in the state system, not file a separate federal lawsuit alleging the same facts. Having unsuccessfully raised the events up to and including her dismissal from the law school in a prior litigation, she is barred from pursuing them here.[2]

In order to avoid this conclusion, plaintiff offers a number of "exceptions" to res judicata that she believes prevent its application to her. None of the exceptions urged by plaintiff are applicable here. First, the "new facts" and "unknown claims" exceptions as urged by the plaintiff are not exceptions at all, but a limitation on the reach of preclusion

---

[2]Because we find that plaintiff should have sought to supplement her complaint in the state trial court following remand, we need not decide whether a plaintiff has a duty under Michigan law to supplement a complaint during the pendency of an appeal. However, we note that there is an apparent conflict in state jurisprudence on this issue. The Michigan Court of Appeals has held that the trial court loses jurisdiction to grant leave to amend after an appeal is filed. *Wiand v. Wiand*, 205 Mich. App 360, 369-370, 522 N.W.2d 132, 136 (1994). Nevertheless, in *Adair*, the Michigan Supreme Court implicitly reached the opposite conclusion by finding the plaintiffs' challenge to various statutory amendments barred by res judicata because they could have raised the issue in a prior litigation. Some of the statutes challenged in *Adair* had not been adopted in the challenged form until the case was on appeal. For example, Mich. Comp. Laws § 380.1527 was adopted on January 9, 1996, with an effective date of July 1, 1996. 1995 Mich. Pub. Acts 289. Because the Michigan Court of Appeals had issued an opinion on September 19, 1995, the application for leave to appeal was pending before the Michigan Supreme Court when the statute attacked was enacted. Nevertheless, the Supreme Court in *Adair* still found that plaintiff's challenge should have been brought in the prior lawsuit. By imposing a requirement to supplement at any point during the "pendency" of a prior lawsuit, *including* while the case is on appeal before the Michigan Supreme Court, the *Adair* court implicitly held that a party could supplement any time before a final decision is reached by the Michigan Supreme Court. *See Adair*, 470 Mich. at 151 n.1, 680 N.W.2d at 412 n.1 (Cavanagh, J., dissenting) (disagreeing with the "majority's holding that a party may amend its pleadings at any time before this Court issues a final decision").

principles. And, as explained above, Michigan preclusion law is broad enough to include plaintiff's federal claims.

Plaintiff also argues that the application of claim preclusion principles to her case would work a "manifest injustice," and that there is an "extraordinary reason" (the state courts' failure to "yield a coherent disposition of the present controversy") not to bar her suit. We have recognized an exception to preclusion principles when "an inflexible application would have violated an overriding public policy or resulted in manifest injustice to a party." *United States v. LaFatch*, 565 F.2d 81, 84 (6th Cir. 1977) (quotations omitted); *see also Storey v. Meijer, Inc.*, 431 Mich. 368, 377 n.9, 429 N.W.2d 169, 173 n.9 (1988). Plaintiff complains that application of res judicata here would work a "manifest injustice" because she is unable to fulfill her desire to become an attorney. A litigant's suffering the consequences of a prior adverse ruling does not compel the application of this exception. To indulge such reasoning would create an exception that swallows the rule. Plaintiff has not established that her situation falls within the "small category of cases," Restatement (Second) of Judgments § 26, comment i, that qualify for a manifest injustice exception.

Relying on the Second Restatement of Judgments, plaintiff also contends that the "recurrent wrong exception" should be applied to her case. *See* Restatement (Second) of Judgments § 26(1)(e) (stating that res judicata may not apply where, "[f]or reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course."). She has failed to cite any authority suggesting that such an exception is, in fact, available to her under Michigan law. Moreover, there is no indication that she elected during the course of her initial suit to only sue for a portion of her damages. In fact, we have held that an argument that the defendant is "continuing on the same course of conduct," actually supports application of res judicata. *Dubuc*, 312 F.3d at 751. If such conduct "has previously been found by a court to be proper, a subsequent court must conclude that the plaintiff is simply trying to relitigate the same claim." *Id.* Plaintiff falls well short of establishing that an exception to res judicata should be applied to her case.

## CONCLUSION

Because the district court correctly found that plaintiff's suit was barred by res judicata, we AFFIRM.