NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0909n.06

No. 10-1718

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Aug 17, 2012***

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| NATHANIEL HATCHETT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| CITY OF DETROIT, CITY OF STERLING | ) | THE EASTERN DISTRICT OF |
| HEIGHTS, COUNTY OF MACOMB, HILTON | ) | MICHIGAN |
| NAPOLEON, KENNETH WILLIAMS, MICHAEL | ) | |
| REECE, SCOTT LUCAS, RICHARD VAN SICE, | ) | |
| JEFFREY PLAUNT, CARL MARLINGA, AND ERIC | ) | |
| KAISER, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

Before: GUY, KETHLEDGE, and WHITE, Circuit Judges.

KETHLEDGE, Circuit Judge.   In 1998, a Michigan court convicted Nathaniel Hatchett of carjacking, armed robbery, kidnaping, and first degree criminal sexual conduct.  Ten years later, the Innocence Project at Thomas M. Cooley Law School uncovered a DNA report, potentially favorable to the defense, that the prosecution had not disclosed to Hatchett.  Hatchett was thereafter released from prison.  He later filed suit under 42 U.S.C. § 1983 in federal district court, alleging that the city of Detroit, the city of Sterling Heights, Macomb County, various individual officers and supervisors, and the assistant prosecutor had each violated his due-process rights.  The district court granted summary judgment to the defendants on all of Hatchett's claims.  We affirm.

I.

In November 1996, a young man attacked a woman as she was getting into her car in Sterling Heights, Michigan. He threatened her life, drove her to a side street, raped her, and left her as he drove off in her car. The victim called the police and went to the hospital, where the staff collected semen from her underwear.

Three days later, Officer Kenneth Williams of the Detroit Police Department spotted Nathaniel Hatchett, along with four passengers, driving the victim's car. Officer Williams stopped Hatchett and questioned him at Detroit police headquarters, where supervisor Hilton Napoleon was present. Williams then turned Hatchett over to Sterling Heights police officers Richard Van Sice and Jeffrey Plaunt, who questioned Hatchett for several hours. Finally, Hatchett confessed to the rape.

Before Hatchett's trial, DNA testing showed that the semen collected from the victim did not originate from Hatchett or the victim's husband. Hatchett alleges that Officer Van Sice and Eric Kaiser, the assistant prosecutor handling his trial, each received the results from the husband's DNA test. Neither Hatchett nor his attorney, however, received notice that the husband was excluded. Despite these results, Kaiser minimized the significance of Hatchett's DNA exclusion during his closing argument, saying, "we can't speculate whether another person, her husband, the Lone Ranger created vaginal deposits that were eventually tested[.]" [Trial Tr. at 250-51.]

Hatchett was convicted after a bench trial and sentenced to 25 to 40 years in prison. On appeal, the State argued that the semen might have originated from the victim's husband. The Michigan Court of Appeals affirmed Hatchett's conviction.

Ten years later, the Innocence Project at Thomas M. Cooley Law School uncovered the report excluding the victim's husband. The court granted Hatchett's motion for a new trial, and the State dropped the charges. Hatchett then brought a § 1983 action in federal district court, basing his claims on two primary allegations of misconduct: first, that Assistant Prosecutor Kaiser and Officer Van Sice deliberately withheld the results of the husband's DNA test; and, second, that Hatchett's confession was coerced by Sterling Heights officers and Officer Williams. The defendants fall into four groups: the City of Detroit defendants, including the City of Detroit, Officer Williams, and Lieutenant Napoleon; the Sterling Heights defendants, including the City of Sterling Heights, Officers Van Sice and Plaunt, and police sergeants Michael Reece and Scott Lucas; the Macomb County defendants, including Macomb County and Macomb County Prosecutor Carl Marlinga; and finally, former Assistant Prosecutor Eric Kaiser. The district court granted summary judgment on all counts to all defendants. Hatchett appeals.

II.

A.

Hatchett argues that the district court erred in granting summary judgment on his claims surrounding his confession. He alleges that Van Sice, Plaunt, and Williams fed him details of the crime and coerced him to confess falsely, in violation of his due-process rights. Hatchett also says that Officer Napoleon approved the Detroit interrogation and that Napoleon was deliberately indifferent in his supervision and training of the officers who conducted it. Similarly, Hatchett alleges that Sergeants Reece and Lucas were deliberately indifferent regarding the Sterling Heights

interrogation. Finally, Hatchett asserts claims of municipal liability against Detroit and Sterling Heights for their alleged practices of coercing false confessions.

But we are not the first court to hear Hatchett's claim that his confession was coerced. At a hearing before his criminal trial (known as a "*Walker*" hearing), Hatchett claimed that his confession was coerced and therefore should be suppressed. *See generally People v. Walker,* 132 N.W.2d 87 (Mich. 1965). Williams and Van Sice testified at the hearing. Hatchett chose not to, even though the judge explained to him that his testimony could not be used against him at trial. After considering the evidence, the court found that Hatchett's confession was voluntary. Hatchett could have appealed the ruling, but did not.

In this case, the district court held that collateral estoppel barred Hatchett from contesting the voluntariness of his confession. We review the district court's application of collateral estoppel de novo. *See Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005). In doing so we apply Michigan law, since "[f]ederal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816-17 (6th Cir. 2010) (citing 28 U.S.C. § 1738).

In Michigan, collateral estoppel has normally three elements: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. *See Storey v. Meijer, Inc.*, 429 N.W.2d 169, 171 n.3 (Mich. 1988). But the last element—mutuality—is inapposite to the question whether a determination in a criminal case has

preclusive effect in a civil case. *See Monat v. State Farm Ins. Co*, 677 N.W.2d 843, 850 (Mich. 2004). So we consider whether the first two requirements are met here.

Michigan courts treat a factual finding as to voluntariness pursuant to a *Walker* hearing as a final determination on the merits. *See People v. Mann*, 280 N.W.2d 577, 578 (Mich. App.1979); *People v. Gray*, 222 N.W.2d 515, 517 (Mich. 1974). There was such a factual finding here, and the issue was actually litigated in the *Walker* hearing. Thus, the first element of collateral estoppel is met.

But Hachett argues the second element is not, because he did not have the husband's DNA-test results at the *Walker* hearing. In Hatchett's view, those results would have somehow discredited the testimony of Williams and Van Sice. But we do not see how the husband's DNA test—which was conducted months after Hatchett confessed—would have shown that Williams and Van Sice used unfair tactics in eliciting the confession. That is particularly true given that Hatchett did not even introduce the results of his *own* DNA test at the hearing. His argument is simply a *non sequitur*; and Hatchett otherwise had every opportunity and incentive to contest the voluntariness of his confession at the *Walker* hearing.

Hatchett also argues that the outcome of his *Walker* hearing cannot have preclusive effect because his conviction was eventually set aside. But that argument conflates the question whether the police officers unconstitutionally coerced Hatchett, with the question whether Hatchett was guilty of the crime. Those are two different questions: under Michigan law, a determination of voluntariness is separate from a determination of guilt. *See People v. Manning*, 624 N.W.2d 746, 750-51 (Mich. Ct. App. 2000).

Thus, we see no basis under Michigan law not to give preclusive effect to the Michigan courts' determination that Hatchett's confession was voluntary. And that means he cannot prevail on his claim that the Detroit and Sterling Heights defendants coerced him to confess.

B.

Hatchett also brings several claims relating to his failure to obtain the results of the husband's DNA test. The district court granted summary judgment on these claims, which we review de novo. *See Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).

1.

Hatchett claims that Kaiser withheld and, alternatively, destroyed the husband's DNA-test results in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Kaiser responds that he is immune from the claims. Prosecutors are entitled to absolute immunity for functions that are an integral part of the judicial process. *See Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010). This immunity extends to suits "arising out of even unquestionably illegal or improper conduct by the prosecutor so long as the general nature of the action in question is part of the normal duties of a prosecutor." *Cady v. Arenac County*, 574 F.3d 334, 340 (6th Cir. 2009). This immunity also extends to suits based upon a prosecutor's failure to disclose exculpatory evidence to a defendant. *See Koubriti*, 593 F.3d at 467 (citing *Imbler v. Patchman*, 424 U.S. 409, 431 n.34 (1976)). Kaiser is therefore immune from Hatchett's claim that Kaiser failed to disclose the results of the husband's DNA test to Hatchett.

But Hatchett seeks to recast this claim as one for the destruction of evidence. Specifically, Hatchett alleges in his complaint that Kaiser's file did not include the results of the husband's DNA

test. But even if one takes that allegation at face value, a failure to put a document in a particular file is not the same thing as destroying it. And Hatchett otherwise points us to no evidence that Kaiser actually destroyed the husband's DNA-test results. To the contrary, the Innocence Project's recovery of the results suggests (if not demonstrates) that the results were not destroyed. Thus, Hatchett simply does not present evidence creating a genuine issue as to whether Kaiser destroyed the results of the husband's DNA test. His claim fails for that reason; and thus we do not express any opinion as to whether a prosecutor's absolute immunity would extend to his destruction of exculpatory evidence.

2.

Hatchett claims that Officer Van Sice violated his *Brady* rights by failing to disclose the husband's DNA-test results to Kaiser. We have held that a police officer must disclose evidence whose "exculpatory value" should be "apparent" to the officer. *Moldowan*, 578 F.3d at 389. But Hatchett himself concedes that Kathy Kuebler, the Michigan State Police laboratory scientist in charge of the test, left a telephone message with Kaiser's secretary to inform Kaiser about the test results. [Appellant's Br. at 45.] And Hatchett concedes that Kuebler faxed a copy of the test results to Kaiser's office. [Id.] Those concessions defeat Hatchett's claim. The Constitution did not require Van Sice personally to follow up and ensure that Kaiser actually reviewed the test results that Hatchett concedes were sent to him.

Hatchett also claims that Prosecutor Carl Marlinga and Macomb County failed to train their assistant prosecutors regarding the disclosure of exculpatory evidence. Supervisory attorneys are immune from a suit directly attacking their actions related to an individual trial. *See Van de Kamp*

*v. Goldstein*, 555 U.S. 335, 345 (2009). And a prosecutor's office may not be held liable under § 1983 for failure to train its prosecutors based on a single *Brady* violation. *See Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011). In *Connick*, the assistant district attorney failed to disclose a laboratory report that could have been favorable to the defense. *Id.* at 1356. The Court held that recurring constitutional violations are not the "obvious consequence" of failing to provide prosecutors with formal training, since they are professionally equipped and ethically bound to know what *Brady* entails and to perform legal research when they are uncertain. *Id.* at 1363. Hatchett's claims are indistinguishable from those in *Connick*. And Hatchett has not offered proof of a pattern of violations or policy of inaction by the County or Marlinga. *See id.* at 1360. These claims therefore fail as well.

3.

Hatchett also claims that the district court erred in granting defendants' motion for summary judgment before all discovery was completed. "We review the trial court's ruling on discovery matters for an abuse of discretion." *Evanoff v. Standard Fire Ins. Co.*, 534 F.3d. 516, 522 (6th Cir. 2008). The discovery that Hatchett thought necessary pertained only to allegedly deficient training by Macomb County and Marlinga. That claim fails under *Connick*, regardless of what the discovery would have shown. Thus, the district court did not abuse its discretion.

The district court's judgment is affirmed.

No. 10-1718
*Hatchett v. City of Detroit, et al.*

**HELENE N. WHITE, Circuit Judge** (concurring in part and dissenting in part). Notwithstanding that a *Walker*[1] hearing is limited to the question of voluntariness, there may be situations where compelling evidence of innocence can be used effectively to undermine the denial of coercion, and, consequently, where the withholding of such evidence impairs a criminal defendant's opportunity to fully and fairly litigate the voluntariness of a confession. Nevertheless, I agree that the withholding of the husband's test results did not affect Hatchett's ability to do so in the instant case.

As to Part II-B-1, although the possibility that Kaiser deliberately withheld and failed to file the test results is disturbing, I believe that *Koubriti v. Convertino*, 593 F.3d 459 (6th Cir. 2010), forecloses Hatchett's claim.

As to Part II-B-2, I conclude that because the evidence raises a question whether Van Sice informed Kaiser of the test results, the claim against Van Sice should not have been dismissed. There is no disagreement regarding the law. We have held that police officers have an absolute, *Brady*-derived duty "to turn over potentially exculpatory evidence to the prosecutor's office." *Moldowan v. City of Warren*, 578 F.3d 351, 381 (6th Cir. 2009). The majority rejects Hatchett's *Brady* claim against Officer Van Sice on the basis of Hatchett's concession that Kuebler left a message with Kaiser's secretary and faxed a copy of the test results to Kaiser's office, observing that Van Sice was not required to personally follow up and ensure that Kaiser actually reviewed the test results. Van Sice, indeed, had no such duty; but Hatchett does not assert such a duty. Hatchett rests

---

[1]*People v. Walker*, 132 N.W.2d 87 (Mich. 1965).

his claim against Van Sice on Van Sice's failure to give the report to Kaiser, rather than any failure to assure that Kaiser read the report. Thus, at issue is the duty to turn the material exculpatory information over to the prosecutor, not a duty to make sure the prosecutor acknowledges receipt of or reviews the information. Although I concede that if Kaiser received the test results from Kuebler, Van Sice's failure to give him the results would have no constitutional significance, Kaiser claims he did not receive the information from Kuebler, and I see no reason why Hatchett's claim against Van Sice should be defeated by Hatchett's admitting that Kuebler made an effort (not known to him at the time) to inform Kaiser. Further, Hatchett's admissions were made at a point in the litigation when it appeared that Kaiser had, in fact, been informed about the test results. Kaiser later denied any such knowledge in his affidavit.[2]

Thus, because genuine issues remain regarding whether Van Sice fulfilled his obligation to turn over exculpatory evidence to Kaiser, and whether Kaiser already knew of the evidence from Kuebler, I would reverse the grant of summary judgment for Van Sice and remand to the district court for further proceedings.

---

[2]I also note that the fax in Kuebler's file has no date/time stamp demonstrating that it was actually faxed, and her contemporaneous case notes do not contain an entry stating that she actually faxed the report to Kaiser.