NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0684n.06

No. 11-4375

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jul 24, 2013*

DEBORAH S. HUNT, Clerk

FRANKLIN PARK LINCOLN-MERCURY, INC.,    )

    )    **ON APPEAL** FROM THE

    **Plaintiff-Appellant,**    )    UNITED STATES DISTRICT

    )    COURT FOR THE

v.    )    NORTHERN DISTRICT OF

    )    OHIO

FORD MOTOR COMPANY,    )

    )    **O P I N I O N**

    **Defendant-Appellee.**    )

BEFORE: NORRIS , MOORE, and DONALD, Circuit Judges.[1]

**ALAN E. NORRIS, Circuit Judge.** Plaintiff Franklin Park Lincoln-Mercury, Inc.

("Franklin Park") is a dealership in Toledo, Ohio that sells automobiles manufactured by defendant

Ford Motor Company ("Ford"). It filed suit against Ford after the latter permitted another Lincoln-

Mercury dealer in the Toledo area to merge with an existing Ford dealership. According to the

complaint, Ford not only permitted the merger, it facilitated the transaction despite knowing that it

would harm Franklin Park because the Toledo area could only support one Lincoln-Mercury

dealership. Franklin Park alleged that Ford's actions violated the Ohio Motor Vehicle Dealers Act

("Ohio Dealers Act"), Ohio Rev. Code § 4517.01 *et seq.*, the federal Automobile Dealers' Day in

Court Act, 15 U.S.C. § 1221 *et seq.*, and constituted a breach of Ford's common law fiduciary duties.

---

[1] Following argument in this case, Judge Donald recused herself from further participation. This decision is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

In a series of opinions, the district court dismissed certain of plaintiff's counts for failure to state a claim and granted summary judgment to Ford with respect to the remaining claims. Only the state-law claims are before us on appeal.

**I.**

Franklin Park has been selling cars manufactured by Ford since 1977. Their relationship is governed by two sales and service agreements ("SSA"): one pertaining to Lincoln vehicles; the other to Mercury vehicles.[2] Before 2008, there was a second Lincoln-Mercury dealership, Rouen Lincoln-Mercury ("Rouen"), in nearby Maumee, Ohio. Another dealership affiliated with Ford, Brondes Ford Maumee, Ltd. ("Brondes Ford"), was located near Rouen.

Since at least 2002, Franklin Park President Robert Fleisher has repeatedly told Ford that the Toledo market was too small to support two Lincoln-Mercury dealerships. According to Franklin Park, this assessment was supported by the deposition testimony of Ford representative Kurt Brinkman. In 2005, a market study commissioned by Ford showed one dealership was optimal, albeit with a caveat that two dealerships might better serve the convenience of its customers. (Page ID 4043.) In fact, by 2006 Ford had begun a market contraction program. As Brinkman put it, "In 2006, we started our consolidation efforts to reduce our dealer count for the purpose of driving more throughput and having healthier dealers and improv[ing] the franchise value of both Ford and Lincoln Mercury." (Page ID 4026.) This theme continued and, in its 2008 annual report, Ford stated, "At our current and expected future market share . . . we have too many dealers, particularly

---

[2]  Since this suit was filed, the Mercury product line has been discontinued.

in U.S. metropolitan areas, which makes it increasingly difficult to sustain a healthy and profitable

dealer base." (Page ID 4157.) The same report said that Ford would fund dealer consolidations "in

the future to reduce further our dealer network to match our sales and dealer sales objectives." *Id.*

Within this economic context, Ford helped to fund a merger between Rouen and Brondes

Ford. In its first memorandum opinion, the district court summed up the consolidation, and Franklin

Park's response to it, in these terms:

> Sometime in late 2007 or early 2008, Rouen and Brondes Ford entered contract negotiations for Brondes Ford to purchase the Rouen Lincoln-Mercury dealership. Plaintiff alleges that Defendant participated in these negotiations and kept them secret from him.
>
> Under the negotiated sale agreement between Rouen and Brondes Ford, Brondes Ford agreed to operate the Lincoln-Mercury dealership at the Rouen location for however long it would take for Brondes to relocate the dealership to the Brondes Ford location. Brondes Ford operated the Rouen dealership at the Rouen location for one day before moving it to the Brondes Ford location. After Rouen and Brondes Ford finalized the sale agreement, Defendant notified Plaintiff of the Rouen/Brondes Ford ownership change.
>
> After receiving notice of the ownership change, Plaintiff filed a notice of protest with the Ohio Motor Vehicle Dealers Board ("Board"). The Board's Hearing Examiner stated that "[t]he statutory language of Revised Code 4517.50 is determinative of the issues raised herein." (Doc. 21, Ex. 9, at 4). He concluded that [D]efendant was not required to provide Plaintiff notice of the ownership change under the Ohio Dealer Act because: 1) the Rouen/Brondes transaction did not create an additional new motor vehicle dealer in the relevant market area and thus § 4517.50(A) [the notice requirement] did not apply; and 2) the relocation of the Rouen dealership to the Brondes location was a move of less than one mile, and thus fell within an exception to the notice requirement, § 4517.50(C)(1). He determined the protest should be dismissed because notice was not required, and thus no right to protest arose . . . .

(Page ID 1693-94) (footnote omitted). The hearing examiner's decision was affirmed first by the Ohio Motor Vehicle Board, then by the Court of Common Pleas, and finally by the Ohio Court of Appeals, Tenth District. The Ohio Supreme Court denied review.

While these state-court actions were proceeding, Franklin Park filed the instant suit in federal court. As mentioned earlier, the First Amended Complaint includes three counts: 1) breach of the Ohio Motor Vehicle Dealers Act; 2) breach of the federal Automobile Dealers' Day in Court Act; and 3) common law breach of fiduciary duty.

Ford filed a motion to dismiss, which was granted in part by the district court. While the court concluded that certain actions were not precluded based upon collateral estoppel, it held that "Plaintiff is precluded from asserting claims under the Ohio Motor Vehicle Dealers Act that it was entitled to notice of and an opportunity to protest the Rouen/Brondes transaction and that it was entitled to a good cause hearing, and is precluded from relitigating certain factual issues." (Page ID 1705.)

Ford later filed another motion to dismiss. The district court granted that motion in part on July 2, 2010. The court determined that Franklin Park had stated a claim for breach of fiduciary duty under common law and for a predatory practice of discrimination under the Ohio Dealers Act, Ohio Rev. Code § 4517.59(A)(15) (formerly § 4517.59(M)). However, it dismissed claims brought under the federal Automobile Dealers' Day in Court Act and under the good faith provision of the Ohio Dealers Act.

Ford filed a motion for summary judgment with respect to these remaining claims, which the district court granted on October 31, 2011.

Turning first to the fiduciary duty claim, the court began by defining its parameters: "To establish a breach of fiduciary duty under Ohio law, a plaintiff must show: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) a resulting injury." (Page ID 4197) (citing *Camp St. Mary's Ass'n of W. Ohio Conference of the United Methodist Church v. Otterbein Homes*, 889 N.E.2d 1066, 1076 (Ohio. App. 2008)). It then distinguished *Manhattan Motorcars, Inc. v. Automobili Lamborghini*, 244 F.R.D. 204, 219 (S.D.N.Y. 2007), a case relied upon by plaintiff for the proposition that a franchisor-franchisee relationship can give rise to fiduciary obligations under exceptional circumstances. After reviewing the special circumstances cited by Franklin Park, the court concluded, "Plaintiff fails to point to any contract provision, or any case law, suggesting its relationship with Defendant was anything other than a typical franchisor-franchisee relationship." (Page ID 4200.)

With respect to Franklin Park's allegation that Ford engaged in a predatory practice under the Ohio Motor Dealers Act, Ohio Rev. Code § 4717.59(A)(15), the court concluded that "Defendant's approval of the Rouen/Brondes transaction may not have been optimal—indeed, it may even have been a bad decision—but the Ohio statute does not prohibit bad decisions, only predatory and discriminatory ones." (Page ID 4203.)

The district court granted summary judgment to Ford. A motion to alter or amend was also denied.

**II.**

We now turn to each of the assignments of error designated by Franklin Park.

*1. Breach of Fiduciary Duty Claim*

The third count of the First Amended Complaint alleges that Ford breached its fiduciary duty to Franklin Park in this manner:

> The Lincoln SSA and Mercury SSA and resulting franchise relationship (1) place Ford in a position of disproportionate power and dominance over Franklin Park, (2) require Franklin Park to provide confidential and proprietary information to Ford, creating a confidential relationship, and (3) make Franklin Park dependent upon Ford for economic survival, forcing Franklin Park to repose special trust and confidence in Ford.

(Page ID 1717.)

As just mentioned, the district court granted summary judgment to Ford on this issue. Consequently, our review is de novo. *Thom v. Am. Standard, Inc.*, 666 F.3d 968, 972 (6th Cir. 2012). The evidence is viewed in the light most favorable to the non-moving party. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013).

As the district court recognized, Franklin Park must jump several hurdles if it wishes to establish a breach of fiduciary duty. Even the dealership candidly concedes, "As a general rule, franchise *relationships—including* those in the automotive industry—are not inherently fiduciary in nature." Brief at 21; *see generally Saydell v. Geppetto's Pizza & Ribs Franchise Sys., Inc*, 652 N.E.2d 218, 231 (Ohio App. 1994) ("A fiduciary relationship does not exist between a franchisor and a franchisee in the absence of a statute expressly creating such fiduciary relationship or, in the alternative, absent an understanding, held by both parties to the subject agreement, that a special trust and confidence has been reposed by the franchisee in the franchisor."). Its principal case in support of such a duty is *Manhattan Motorcars*. Like the instant case, *Manhattan Motorcars* involved a dispute between a dealership and a manufacturer, in that case Lamborghini. When Lamborghini

permitted another dealership to open in plaintiff's territory, Manhattan Motorcars sued and included a claim of breach of fiduciary duty. While the case involved New York law, the elements of the claim mirror those in Ohio:

> A claim for breach of fiduciary duty involves three elements: breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages. There are four elements essential to the establishment of a fiduciary relationship: (1) [t]he vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself. Generally, where parties deal at arms-length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances. Nevertheless, *a distributorship agreement may, in some rare instances, create a confidential relationship out of which a duty of fiduciary care arises*.

*Manhattan Motorcars*, 244 F.R.D. at 214-15 (citations and punctuation omitted) (emphasis added). Franklin Park relies on the final sentence of the quoted language in urging us to find that, at the very least, it had created a material issue of fact that should have precluded summary judgment. Were we to adopt the *Manhattan Motorcar* rationale, we would determine whether the circumstances of this case represent a "rare instance" where a fiduciary relationship exists between the franchisor and franchisee.

Franklin Park takes the district court to task for weighing evidence, making judgements about credibility, ignoring affidavits and admissions against interest, and assuming facts not in the record. It reminds us that "it is an incontestible fact in our judicial history that the jury is the sole tribunal to weigh and determine facts." *Thigpen v. Cory*, 804 F.2d 893, 902 (6th Cir. 1986). With that precept in mind, we turn to the evidence that the district court allegedly overlooked or misinterpreted.

First, Franklin Park contends that the district court selectively cited to portions of President Robert Fleisher's deposition. The court cited[3] Fleisher's concession that Ford thought that it would make more money with two rather than one dealership in Toledo. He followed that concession by stating that, in his opinion, there was no business justification for two dealerships. (Page ID 4203) (district court opinion); (Page ID 2078-79) (Fleisher deposition). After citing this testimony, the district court concluded, "Defendant thought two dealerships were better than one, and making a profit is certainly a legitimate business justification." *Id.* Franklin Park contends that the "court completely ignored Mr. Fleisher's express deposition testimony that there [was] 'no business justification' for two Lincoln dealerships in Toledo. Illegal profits are not a legitimate business justification." Brief at 24. To the contrary, the district court acknowledged Mr. Fleisher's testimony but determined that, if Ford thought that it could make more money with two dealerships, it had a legitimate business justification for its position: "Defendant's approval of the Rouen/Brondes transaction may not have been optimal—indeed it may even have been a bad decision—but the Ohio statute does not prohibit bad decisions, only predatory and discriminatory ones." (Page ID 4203.) We detect no misrepresentation of Mr. Fleisher's deposition nor do we take issue with the district court's consideration of Ford's alleged business justification for authorizing two dealerships. The burden lies with Franklin Park to raise a material issue as to whether Ford's profit motive was, in

---

[3] The alleged misrepresentations to which Franklin Park objects were actually made by the district court in its discussion of the assignment of error regarding predatory practices, not in the context of the fiduciary duty claim.

fact, illegal. Moreover, the court did not rely upon this deposition testimony in resolving this issue. We turn to its other arguments.

Franklin Park complains that the district court did not cite to an affidavit submitted by Dr. John Matthews, an expert who teaches automotive logistics at the University of Wisconsin-Madison. Matthews opined that "the Toledo market would be better served by one store with a higher throughput, making profits that can be reinvested in the Lincoln brand." (Page ID 3957.) Franklin Park takes the view that this testimony establishes that the Toledo market could only economically support one Lincoln-Mercury dealer. According to the dealership, Dr. Matthews' opinion is consistent with Ford representative Kurt Brinkman's deposition testimony. As mentioned earlier, Brinkman conceded that Ford was shrinking the number of dealers in metropolitan areas during the period in question. Brinkman testified that the optimal number of dealerships was one in Toledo "based on best-in-class throughput." (Page ID 4043.) He also conceded that Ford had not done a market analysis in 2008 when approving the consolidation of the Rouen and Brondes dealerships, nor did Ford consider the effect upon Franklin Park. (Page ID 4075.)

Turning to the SSA itself,[4] Franklin Park argues that it imposes a number of obligations on the dealership that gave Ford such extreme control over the relationship that, like the Lamborghini dealership in *Manhattan Motorcars*, a fiduciary duty was created. The specific obligations cited by Franklin Park were addressed by the district court in its opinion. (Page ID 4198.) They include the

---

[4] In fact, there are two nearly identical sales and service agreements in the record: one governs the Lincoln line and the other Mercury. Because the Mercury line no longer exists, all references are to the SSA governing the Lincoln line of automobiles. (Page ID 2335.)

duty to report sensitive information to Ford, such as the dealership's balance sheet, profitability, and other operations information.

For its part, Ford reminds us that a franchisor-franchisee relationship does not create a fiduciary duty unless by specific and mutual agreement. It directs us to a case with similar facts—albeit from Georgia—in which the court noted, "nothing about this case suggests that Defendant exercised the type of control over Plaintiffs which would be required to impute a fiduciary duty." *Capital Ford Truck Sales, Inc. v. Ford Motor Co.*, 819 F.Supp. 1555, 1580 (N.D. Ga. 1992). According to Ford, its relationship to Franklin Park was one of business entities operating at arm's length. In fact, the SSAs spell out that each party preserved its rights and interests. For instance, Ford "reserves the right to determine, from time to time, in its best judgment, the numbers, locations and sizes of authorized dealers necessary for proper and satisfactory sales and service representation for COMPANY PRODUCTS within and without the DEALER'S LOCALITY." (Page ID 2349.) Hence, in Ford's view, it explicitly reserved the right to appoint a replacement dealer such as Brondes.

In addition, Ford argues that, because the parties are regulated by the Ohio Dealers Act, they have conflicting interests which preclude a fiduciary relationship. Under the Act, Ford was obliged to approve Rouen's transfer of assets absent "good cause." Ohio Rev. Code § 4517.57(C). Good cause does not include a franchisee's plan to relocate a dealership. *Id*. § 4517.56(E)(5). Hence, even if Ford had determined that one dealership was the optimal number for Toledo, the Ohio Dealers Act would have prevented it from thwarting the transfer.

Finally, Ford contends that a *Manhattan Motorcars* type of exception would not apply in this case for a number of reasons. Franklin Park retained exclusive control over its human resources decisions and advertising; and the dealership was not obliged to share confidential information regarding prospective customers with Ford. In short, Ford did not exercise total control over the dealership.

While we recognize that the automobile market is a highly competitive one and that the existence of a second Toledo dealership may have had a negative impact on Franklin Park's bottom line, those considerations do not take this case out of the realm of a typical franchisor-franchisee relationship. The SSAs established a number of duties on the part of Franklin Park, but, as the district court recognized, they also granted the dealership a fair amount of autonomy in advertising, staffing, the purchase and sale of used cars, the ability to sell cars outside of its market area. In short, we see nothing that makes this a "rare instance" where a confidential relationship gave rise to a fiduciary duty. Accordingly, we affirm the district court's grant of summary judgment on this issue.

## 2. Predatory Practices Claim

The Ohio Dealers Act includes a cause of action for predatory practices. The provision, which was amended in 2010, reads as follows:

> (A) Notwithstanding the terms, provisions, or conditions of any agreement, franchise, or waiver, no franchisor shall:
>
>    . . . .
>
> (15) Engage in any predatory practice or discriminate against any new motor vehicle dealer including discriminating against a franchisee, as compared to a same line-make franchisee, with regard to motor vehicle allocation, motor vehicle sales expectations, motor vehicle market penetration, motor vehicle planning volume

requirements, customer service satisfaction requirements, dealership facility requirements, or dealer capitalization requirements[.]

Ohio Rev. Code § 4517.59(A)(15). In rejecting this claim, the district court provided the following rationale:

> Ohio courts have not interpreted the meaning of "predatory practice" or "discriminate" as used in the [Ohio Dealers Act]. "[W]hen comparable legislation has been construed in other jurisdictions prior to the enactment of a similar Ohio statute, the interpretation given the law in the other jurisdictions is to be given great weight in construing the Ohio statute." *Koster v. Boudreaux*, 11 Ohio App. 3d 1, 6 (Ohio Ct. App. 1982); *see also Schneider v. Laffoon*, 40 Ohio St. 89, 96 (1965).
>
> The current version of Revised Code § 4517.59 was adopted in 2010. Prior to this adoption, other jurisdictions defined what constitutes predatory practice or discrimination by a vehicle manufacturer against its dealers. A manufacturer is not predatory if it "acts in good faith and with good cause . . . ." *Saccucci Auto Grp., Inc. v. Am. Honda Motor Co., Inc.*, 2009 U.S. Dist. LEXIS 122015, * 21 (D. R.I. 2009) (internal quotations omitted). "Predatory conduct 'has no legitimate business justification other than to destroy or damage competition.'" *Id.* (citing *Great Escape, Inc. v. Union City Body Co. Inc.*, 791 F.2d 532, 541 (7th Cir. 1986)). Interpreting language nearly identical in the [Ohio Dealers Act], a Delaware court defined predatory practice or discrimination as a "sacrificing of present revenue with the aim of driving a competitor out of the market . . . ." *Dave Greytak Enters., Inc. v. Mazada Motors of Am., Inc.*, 622 A.2d 14, 20–21 (Del. Ch. 1992).

(Page ID 4201.) After reviewing the record, particularly the deposition of Robert Fleisher, the district court concluded that "[t]here is absolutely no evidence in the record to support the charge that Defendant wanted to drive Plaintiff out of the Toledo market. The record indicates the opposite: Defendant preferred two dealerships." (Page ID 4203.) In language quoted in the previous section of this opinion, the district court ended its discussion by noting that while the Rouen/Brondes consolidation "may not have been optimal," it was at best a bad business decision, not a predatory or discriminatory one. *Id.*

Franklin Park reminds us that the Ohio Dealers Act is remedial in nature and therefore must be construed liberally. *See Earl Evans Chevrolet, Inc., v. Gen. Motors Corp.*, 598 N.E.2d 1187, 1193 (Ohio. App. 1991). As it did below, Franklin Park advances the argument that, because Ford knew that Toledo could not support more than one Lincoln-Mercury dealership, "consolidating the Rouen Lincoln-Mercury brands at the Brondes Ford dealership demonstrated that it had made a conscious decision to choose Brondes over Franklin Park." Brief at 43. Plaintiff then explains how Ford facilitated the consolidation and how, without that help, it never would have occurred. First, Mr. Rouen initially wanted to sell his dealership for $1,000,000. (Page ID 2501.) Randy Stewart, who was Kurt Brinkman's supervisor at Ford, advised him that he was asking too much. *Id.* Eventually, Rouen settled for $700,000. However, Mr Brondes was only willing to pay $520,000. Ford stepped in and paid the difference. (Page ID 4073.) According to Franklin Park, this cash infusion was essential to the deal. In addition, Ford agreed to pay $250,000 to Brondes for facility improvements. (Page ID 4138.) In short, Ford was predatory in its treatment of Franklin Park by openly supporting its cross-town rival dealership.

Ford responds that its approval of the disputed consolidation was required by the Ohio Dealers Act and supported by sound business judgment. Neither "discrimination" nor "predatory practice" under the Act are defined in the Act itself, nor is there any Ohio case law that does so. Ford refers us to the same cases cited by the district court: *Dave Greytak Enter., Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 20-21 (Del. Ch. 1992); *see also Saccucci Auto Group, Inc. v. Am. Honda Motor Co.*, 617 F.3d 14, 26 (1st Cir. 2010). As quoted by the district court, *Greytak* defined predatory practice as follows: "The type of conduct contemplated by that phrase is the sacrificing

of present revenue with the aim of driving a competitor out of the market, expecting to recoup the losses through subsequent higher prices after the competition is eliminated." 622 A.2d at 20-21. Like the Delaware statute at issue in *Greytak*, Ford asks us to note that none of the prohibited behaviors listed in § 4517.59(A)(15) involve the sale or relocation of an existing dealership.

Turning to the allegation that Ford somehow aimed at driving Franklin Park out of business, the company cites Mr. Rouen's deposition testimony that the sale of the dealership was sparked by an offer for the real estate where it was located, not the dealership itself. For his part, Mr. Brondes stated that no one at Ford ever expressed the desire to drive Franklin Park out of business. (Page ID 2949.) Ford then cites Robert Fleisher's deposition remark that Ford would make more money with two dealerships provided both survived. (Page ID 2079.) This testimony convinced the district court that Ford had a legitimate—if perhaps misguided—business reason for supporting the consolidation.

Notably, Franklin Park continues to exist and has remained viable. (Page ID 2097) (Fleisher deposition). Moreover, the market studies relied upon by the district court confirm that the Toledo area could support two Lincoln-Mercury dealers. Even though plaintiff's expert, Dr. Matthews, submitted an affidavit stating that the area would be better served by a single dealership, Ford points out that this difference of opinion does not mean that the company was attempting to run Franklin Park out of business.

We agree with the reasoning of the district court with respect to this issue. The Ohio Dealers Act does not list dealership transfers as a practice that could give rise to a claim of discrimination or predatory practice. Ohio Rev. Code § 4517.59(A)(15). As the district court recognized, Ford made a business decision in what it perceived to be in its own best interest. There is nothing in the

record to indicate that it was anything more than that. Hence, Franklin Park has not established that

Ford engaged in a predatory practice as contemplated by the Ohio Dealers Act.

### 3. Duty to Act in Good Faith

The district court dismissed Franklin Park's claim that Ford failed to act in good faith as

required by the Ohio Dealers Act for failure to state a claim. Accordingly, our review is de novo.

*Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). To survive a motion to

dismiss, Franklin Park must plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While

the court must accept all well-pleaded factual allegations as true and construe the complaint in the

light most favorable to Franklin Park, it need not accept unwarranted factual inferences. *Bennett v.*

*MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010).

With those precepts in mind, we turn to the reasoning of the district court:

> The Ohio Motor Vehicle Dealers Act bars Ford from failing to act in good
> faith in its treatment of Franklin Park. Revised Code Section 4517.59(A) prohibits
> franchisors "in acting or purporting to act under the terms, provisions, or conditions
> of a franchise or in terminating, canceling, or failing to renew a franchise, [to] fail to
> act in good faith." Revised Code Section 4517.5[9]. "Good faith" is defined as:
>
> > honesty in the conduct or transaction concerned and the observance
> > of reasonable commercial standards of fair dealing in the trade as is
> > defined in . . . section 1301.01 of the Revised Code, including, but
> > not limited to, the duty to act in a fair and equitable manner so as to
> > guarantee freedom from coercion, intimidation, or threats of coercion
> > or intimidation; provided however, that recommendation,

> endorsement, exposition, persuasion, urging or argument shall not be considered to constitute a lack of good faith.
>
> Revised Code Section 4517.01(BB).
>
> Franklin Park asserts Ford failed to act in good faith by "taking advantage of a loophole in the Ohio Dealer Act by structuring the Brondes transaction to avoid a protest," in addition to "installing a Lincoln/Mercury dealership at Brondes when it knew the Toledo market could not support two Lincoln/Mercury points" (Doc. No. 38, p. 22). But Franklin Park does not allege that Ford failed to act in good faith with regard to the "terms, provisions, or conditions" of the franchise agreement. Revised Code Section 4517.59(A). The Amended Complaint does not reference any particular term or condition of the franchise agreement. Rather, Franklin Park simply states that Ford's efforts to drive Franklin Park out of the market and out of business constitute bad faith (Doc. No. 31, ¶ 73). Because none of the alleged facts are connected to the terms of the franchise agreement between Franklin Park and Ford, the bad faith claim under the Ohio Motor Vehicle Dealers Act must be dismissed.

(Page ID 1831-32.)

Franklin Park argues that the district court erred in finding that its claim of failure to act in good faith was alleged with insufficient particularity under the requirements of § 4517.59(A). We agree. As an initial matter, the district court misstated the requirements of § 4517.59(A) when it dismissed Franklin Park's claim for failure to "allege that Ford failed to act in good faith *with regard to* the 'terms, provisions, or conditions' of the franchise agreement." (Page ID #1832 (quoting Ohio Rev. Code Ann. § 4517.59(A) (emphasis added).) As evidenced by the plain language of the statute, however, the duty of good faith is not tied to specific provisions of a franchise agreement. Rather, this duty arises when a franchisor acts "*under* the terms, provisions, or conditions of a franchise." Ohio Rev. Code Ann. § 4517.59(A) (emphasis added). In other words, a party governed by a franchise agreement must act in good faith under § 4517.59(A). *See Eastside Lincoln Mercury, Inc. v. Ford Motor Co.*, No. C-1-01-567, 2004 WL 6033074, at *6 (S.D. Ohio July 15, 2004)

("Specifically, Eastside claims a violation of section 4517.59, which imposes on motor vehicle franchisors a good faith requirement."); *cf. Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 206–07 (6th Cir. 1995) (addressing a § 4517.59(A) claim under the agreement as a whole and describing the claim without reference to a specific provision); *Car Bus., Inc. v. Fleetwood Motor Homes of Indiana, Inc.*, 492 N.E.2d 488, 491 (Ohio Ct. Com. Pleas 1985) ("That is, parties that have franchises, regardless of whether they are written or verbal, under the liberal construction rule, would have the protection of this remedial section." (citing Ohio Rev. Code Ann. § 4517)).

When the correct standard is applied, it is clear that Franklin Park alleged with sufficient particularity a claim under § 4517.59(A). In its factual background section, Franklin Park alleged that "Franklin Park is a dealer of new Lincoln-brand motor vehicles pursuant to a franchise-agreement contract between Franklin Park and Ford, namely, a 'Lincoln Sales and Service Agreement' ('the Lincoln SSA')" and that "[i]n addition to the Lincoln SSA . . . , the relationship between Franklin Park and Ford is controlled by state and federal laws." R. 31 (First Am. Compl. at ¶¶ 9, 11) (Page ID #1709–10). Franklin Park also asserted that "Ohio Revised Code 4517.59 bars Ford from failing to act in good faith in its treatment of Franklin Park." *Id.* ¶ 39 (Page ID #1713). Franklin Park then detailed the purported acts of bad faith, such as intentionally concealing from Franklin Park that "the Brondes/Rouen buy-sell arrangement was contingent upon the operation of the Lincoln/Mercury franchise," before concluding that "Ford's efforts to drive Franklin Park out of the market and out of business constitute bad faith." *Id.* ¶¶ 40–75 (Page ID #1713–16).

In sum, Franklin Park has alleged that Ford and Franklin Park operated under a franchise agreement and that, while governed by the franchise agreement, Ford acted in bad faith. Franklin

Park has therefore sufficiently pleaded a violation of § 4517.59(A). We reverse the dismissal by the district court of Franklin Park's claim that Ford failed to act in good faith under § 4517.59(A).

### 4. Motion to Alter or Amend

Finally, Franklin Park attempts to appeal the district court's denial of its motion to alter or amend. However, Franklin Park failed to designate the district court's denial as an order to be appealed; hence it is not before us. Fed. R. App. P. 4(a)(4)(B)(ii); *see also Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 665 (6th Cir. 2008) (declining to entertain the denial of motion for new trial because the order was not designated in the notice of appeal).

**III.**

The judgment of the district court is **affirmed** in part and **reversed** in part. This cause is **remanded** for further proceedings consistent with this opinion.